CLARENCE D. ARLANDSON v. HUBERT H. HUMPHREY
AND OTHERS.
WALLACE B. HEINZEN v. SAME.
CHARLES C. VAN RICKLEY AND OTHERS, INTERVENERS.[1]

May 23, 1947.

No. 34,399.

*R. S. Wiggin,* City Attorney, and *John F. Bonner,* Assistant City Attorney, for defendant-appellants.

*J. Stewart McClendon,* for intervener-appellants.

*J. A. A. Burnquist,* Attorney General, and *William C. Green,* Assistant Attorney General, as *amici curiae* joined with appellants on their brief.

*Brill, Maslon, Grossman & Brill* and *Roger E. Joseph,* for respondents.

*W. R. Selb* and *R. H. Comaford,* filed a brief as *amici curiae* on behalf of the American Legion, Department of Minnesota.

[1]Reported in 27 N. W. (2d) 819.

50

FRANK T. GALLAGHER, JUSTICE.

This is an appeal from a judgment of the district court of Hennepin county permanently restraining the civil service commission of the city of Minneapolis from certifying or employing any person on the police department of Minneapolis if such certification and employment necessitates the discharge of any of the present members of the police department in good standing.

Respondent Clarence D. Arlandson had been on the police department of the city of Minneapolis as a temporary incumbent. On January 16, 1946, he was displaced by the regular incumbent, who had returned from military service. The city council of Minneapolis subsequently authorized the addition of 20 policemen to the city force. At this point the controversy here involved arose. Under the then existing rules of the Minneapolis civil service commission, Arlandson was entitled to fill one of the vacancies. However, Charles Van Rickley and others contended that they should be employed to fill the same vacancies and filed complaints in intervention. They based their claim on the fact that prior to their entry into the armed services their names were on the civil service eligibility list ahead of Arlandson and others who had been given employment. Furthermore, had they not entered the service of their country, they would have been employed ahead of Arlandson and others whose names appeared below theirs on the eligibility list. Because of these facts, they contended that they should receive the benefits of M. S. A. § 192.261, which provides for reinstatement, on his return from military service, of any municipal "officer or employee" to the position he formerly held or to a position of like seniority and pay. The civil service commission, acting through the city attorney of Minneapolis, sought the aid of the attorney general of the state in construing this statute, and the attorney general handed down an opinion, dated November 13, 1945, which states in part:

"A person who has attained a status under civil service examinations and regulations where military service was the only reason for his not entering the City's employment at the time he could and would otherwise have done so is in a position equivalent to that of

employee, and therefore, should, in my opinion, be construed to be an employee within the meaning of the act."

Defendant members of the civil service commission, acting upon the opinion of the attorney general, refused to certify Arlandson for employment. Arlandson, on behalf of himself and others similarly situated, then commenced this action. Wallace B. Heinzen, in the same status as Arlandson, also commenced an action for a like injunction and because of the similarity of the actions it was agreed between the parties that they be heard together. The trial court held that the term "employee" as used in § 192.261 was not broad enough to include this class of persons, but included only those who at the time of their induction into the military and naval forces of the United States were actually discharging the duties of policemen. Defendants and interveners appealed from the judgment of the trial court. They claimed that this is too narrow a construction of the term "employee" and that the legislature intended to include in that term persons on the eligibility list who had qualified for positions as policemen but were unable to accept employment because of their induction into military service.

The sole question presented by this appeal is whether persons who at the time of their entry into the armed services of the United States were on the list of those eligible for employment on the police department of the city of Minneapolis, but who were not actually discharging the duties of policemen because they had not yet been hired, come within the terms of § 192.261 so as to be eligible for the benefits of that statute.

Appellants assign as error (1) that the court erred in granting respondents a temporary and permanent injunction, and (2) that the court erred in determining that the word "employee" as used in the statute above referred to does not include persons who had passed examinations for policemen and who would have been certified to fill vacancies in the police department ahead of respondents and would have accepted employment in said department had they not been in the armed services of the United States when vacancies in the department occurred.

The question really simmers down to an interpretation of the word "employee" as used in the statute. L. 1941, c. 120, § 2, subd. 2, provides for reinstatement of public employes on certain conditions, and that "Upon such reinstatement the officer or employee shall have the same rights with respect to accrued and future seniority status, efficiency rating, vacation, sick leave, and other benefits as if he had been actually employed during the time of such leave." L. 1941, c. 120, § 2, subd. 2, as amended by L. 1945, c. 489 (now M. S. A. § 192.261), added the italicized words in the part of the statute which reads as follows:

"Subd. 2. **Reinstatement.** Except as otherwise hereinafter provided, upon the completion of such service such officer or employee shall be reinstated in the public position, which he held at the time of entry into such service, *or a public position of like seniority, status, and pay if such is available* at the same salary which he would have received if he had not taken such leave, upon the following conditions: * * *."

Funk & Wagnalls New Standard Dictionary, 1945, defines the word "employee" as "A person who is employed; one who works for wages or a salary; one who is engaged in the service of or is employed by another." An employer is defined as "One who employs; one who uses or engages the services of other persons for pay." The definition of "employ" is "To engage, have, or keep for or in service or duty; procure or retain the services of; set or keep at work; furnish work or occupation for; as, to *employ* an agent." The standard dictionaries may be consulted for the approved use of words. See, 6 Dunnell, Dig. & Supp. § 8968. We are not relying entirely, however, upon the dictionary definition to determine the meaning of the word "employee," as we have examined numerous cases for the purpose of ascertaining legal definitions given to the word.

In National Wooden Box Assn. v. United States, 59 F. Supp. 118, 121-122, 103 Ct. Cl. 295, 300-302, the word "employee" is defined as one who works for wages or salary in the service of an employer.

In Northwestern Hospital v. Public Bldg. S. E. Union, 208 Minn.

389, 392, 294 N. W. 215, 217, this court accepted the definition of "employee" given in Black, Law Dictionary (3 ed.) p. 657, as—

"One who works for an employer; a person working for salary or wages; applied to anyone so working, but usually only to clerks, workmen, laborers, etc., * * *."

Under the workmen's compensation act, only those are employees who "perform a service for hire" and to whom some "employer directly pays wages." Supornick v. Supornick, 175 Minn. 579, 582, 222 N. W. 275, 277.

M. S. A. § 268.04, subd. 11, reads as follows:

" 'Employee' means every individual, whether male, female, citizen, alien, or minor, who is performing, or subsequent to January 1, 1936, has performed services in insured work."

In Schooley v. Industrial Comm. 233 Wis. 631, 290 N. W. 127, the court held that to constitute a person an "employee" under the workmen's compensation act such person must render services for another in the state under a contract of hire, express or implied, oral or written.

In Meredith Pub. Co. v. Iowa Emp. Sec. Comm. 232 Iowa 666, 6 N. W. (2d) 6, the court held that an "employee" is a person bound to duty of service, subject to the master's command as to the manner in which work should be done.

In People v. Grier, 53 Cal. App. (2d) 841, 128 P. (2d) 207, the court held that the test of whether one is an "employee" is whether his personal services are rendered to his alleged employer.

In Armour & Co. v. Rice, 199 Ark. 89, 134 S. W. (2d) 529, the court held that the status of an "employee" arises where one is engaged by another person to perform work or services as directed and controlled by the other person and upon the other person's promise to pay wages, salary, or compensation for such services.

In Walling v. Portland Terminal Co. 330 U. S. 148, 152, 67 S. Ct. 639, 641, 91 L. ed. —, —, it was determined that prospective railroad yard brakemen who were required to take a course of practical training before they could be accepted for such jobs were not "em-

ployees" during such training period so as to come under the wage and hour provisions of the Fair Labor Standards Act, 29 USCA, § 201, *et seq.* The definitions of "employ" and "employee," the court said, "cannot be interpreted so as to make a person whose work serves only his own interest an employee of another person who gives him aid and instruction."

Men being transported to work who had as yet done no work and earned no compensation were not "employees" within the workmen's compensation act, N. J. S. A. 34:15-1, *et seq.* The Linseed King (D. C.) 48 F. (2d) 311, 319.

In a general sense, the "employee" is one who renders service for another for wages or salary. Shields v. W. R. Grace & Co. 91 Or. 187, 205, 179 P. 265, 271.

The word "employee" is applicable only to one who is in present service of another for pay at a particular time. Koch v. Wix, 108 Ind. App. 20, 25 N. E. (2d) 277.

See, also, Fertel v. Rosenzweig, 28 N. Y. S. (2d) 6; 14 Wd. & Phr. (Perm. ed.) p. 357, *et seq.*

It would appear from these definitions that to be an "employee" one must perform services. In the instant case, there is no claim that actual services were rendered by interveners at any time, but merely a claim that the persons involved were ready to go to work as policemen when their names were reached on the eligibility list and would have done so except for the fact that they were in military service at the time their names were reached and were thus unable to respond to the call.

We have carefully considered the opinion of the attorney general and recognize that it has weight, even though we are compelled under our interpretation of the definitions and decisions to differ with his conclusion.

We are here confronted with the duty of rendering a decision in a matter involving the interpretation of a statute. It is our responsibility as a court to interpret and construe uncertain language. Where there is no uncertainty or ambiguity in the language, the statute speaks for itself.

"Rules of construction are not 'laws' to be enforced inflexibly, but are merely suggestions to the judicial mind. They are not the masters of the courts, but merely their servants to aid them in ascertaining the legislative intent. Statutes must be so construed as to give effect to the obvious legislative intent, though the construction is contrary to such rules." 6 Dunnell, Dig. § 8937.

"* * * If the language of a statute is plain and unambiguous, there is no room for construction. A statute is to be enforced literally as it reads, if its language embodies a definite meaning which involves no absurdity or contradiction." 6 Dunnell, Dig. § 8938.

"Unless obviously used in a different sense, words in a statute are to be construed in their ordinary, popular sense,—according to the common and approved usage of the language." 6 Dunnell, Dig. § 8968, and cases cited.

In Oppegaard v. Board of Commrs. 120 Minn. 443, 447, 139 N. W. 949, 950, the court said:

"* * * To the same effect are the rules of statutory construction that language which is plain and unambiguous requires no construction; that if the language embodies a definite meaning, and involves no absurdity or contradiction, literal enforcement is required, the statute being 'its own best expositor;' * * *."

In applying the above rules to what might have been the intention of the legislature in connection with the use of the words "officer or employee" in the statutes above referred to, it clearly appears that the legislature was referring to officers and employes *then employed* at the time the acts were passed. If it had been the intention of the legislature to broaden the interpretation of the word "employee" sufficiently to include persons not in the actual employ of the state or municipality, but who were then on eligibility lists, it would have been a simple matter for the legislature to include the latter group within the act. Because of the well-known meaning of the word "employee" as defined above, we do not believe that it is within the power of this court to attempt to construe the statute so as to make the word "employee" include persons on civil service eligibility

lists who at no time had been employed. We conclude that the word "employee" as used in the statutes here involved does not include persons on such eligibility lists. In reaching this conclusion, we have been seriously concerned with the welfare of the persons here involved—those who entered the armed services at the call of their country and thus jeopardized their chances for the positions for which they were eligible on the civil service list. However, it appears to us that any adjustment of the status of such persons would have to be made, if possible, by a change in the statute and the civil service rules rather than by reading into the statute a different meaning of the word "employee" from that clearly accepted by usage and legal precedent. Unfortunately, those who are called to do their part in the defense of their country are rarely compensated as fully as they should be. Some are compelled to make the supreme sacrifice. Some are crippled and maimed for life. Others are placed in a changed status upon their return to civilian life. Such inequalities will probably continue as long as we have wars, and it is to be hoped that our government will do everything possible to alleviate them. Yet, as a court, we are restricted to the *interpretation* of laws. We cannot, however much we might wish to do so, change or expand legislation by judicial interpretation to conform to our personal views.

In the case before us, we believe that there can be no question about the meaning of the statute, and we conclude that it was not the intention of the legislature to include those on civil service eligibility lists who were not actually employed at the time they entered the armed forces.

Affirmed.

Mr. Justice Thomas Gallagher, having previously represented some of the litigants, disqualified himself from taking part in these proceedings.