# MANKATO CITIZENS TELEPHONE COMPANY v. COMMISSIONER OF TAXATION.

145 N. W. (2d) 313.

September 30, 1966—No. 40,053.

*Blethen, Ogle, Gage & Krause,* for relator.

*Robert W. Mattson,* Attorney General, and *Ralph W. Peterson,* Special Assistant Attorney General, for respondent.

NELSON, JUSTICE.

Certiorari to review a decision of the Tax Court affirming an order of the commissioner of taxation.

The relator, Mankato Citizens Telephone Company, is independent and locally owned, with its principal office and central exchange facilities located in Mankato, a city of the second class with a population of about 24,000. The company serves several rural and contiguous areas.

Relator is required to pay a tax upon its gross earnings pursuant to the provisions of Minn. St. 295.34. Section 295.34, subd. 1(b), imposes on a telephone company a tax of "4 percent of its gross earnings from exchange business of all cities of the fourth class and boroughs and villages having a population of 10,000 or less"; and

subd. 1(c) imposes on such a company a tax of "7 percent of its gross earnings derived from all other business * * *."

The commissioner of taxation audited relator's gross earnings tax reports for the calendar years 1959 to 1962 and certified a deficiency in the principal amount of $7,504.50, asserting that relator had erroneously reported its gross earnings from service rendered to subscribers in North Mankato at 4 percent pursuant to § 295.34, subd. 1(b), rather than at 7 percent under subd. 1(c). North Mankato is a city of the fourth class with a population of about 6,000, located adjacent to Mankato.

The legal issue involved on this appeal is as follows: Where a telephone company's central exchange facilities and central office are located at a city of the second class, should a 4- or 7-percent rate of tax be imposed under the foregoing provisions on the gross earnings of that company received from subscribers located in a contiguous city of the fourth class? The Tax Court determined that the 7-percent rate applied in the instant case.

Relator contends that prior to 1960 it could not determine its earnings from North Mankato as distinguished from the city of Mankato without going into a costly manual accounting. It had, therefore, prior to 1960, reported its gross earnings from the two contiguous cities as a lump sum and paid a 7-percent gross earnings tax on the whole of that sum. (It should be noted, however, that relator could determine its 1960 earnings from rural service out of the Mankato exchange as the telephone numbers in those areas had some identifying characteristics and, consequently, the gross earnings from that service were taxed at 4 percent as provided by § 295.34, subd. 1[a].) In 1960, as a byproduct of installed automated equipment, relator was able to determine the amount of revenue derived through serving North Mankato. Consequently, in 1960, 1961, and 1962, relator was better able to report its earnings from North Mankato separately and paid a 4-percent gross earnings tax thereon.

On November 18, 1963, the commissioner ordered that a tax of 7 percent be assessed on the company's earnings from North Mankato and determined that taxes plus added penalties were due in the amount

of $9,505.22. Relator appealed to the Tax Court, contending that it properly computed its tax under § 295.34, subd. 1(b). It argues that the preposition "of" in the phrase "exchange business of all cities of the fourth class" means derived from or arising from, and thus that its gross earnings derived from North Mankato are subject to tax at the 4-percent rate. The commissioner of taxation contends, however, that "of" is susceptible of other meanings and that the legislature did not intend to give it the one for which relator contends. Section 295.34, subd. 1(b), as first enacted in Ex. Sess. L. 1937, c. 10, § 1, provided for a tax of 4 percent on gross earnings from "exchange business at" cities of the fourth class. The word "of" first appeared in the compilation and revision of the statutes adopted by the legislature in 1945. It is clear that the original wording, "exchange business at," requires that the exchange be located within the fourth-class city (North Mankato) to qualify for the 4-percent rate. This appeal, therefore, involves a question of statutory interpretation. The Tax Court in a memorandum accompanying its decision takes the position that the commissioner's order does not necessarily imply a finding that the revenues received from North Mankato were from exchange business in the city of Mankato, but merely means that relator has not established that the business involved falls within a classification governed by § 295.34, subd. 1(b), and that, at best, what relator has established is that the exchange business was conducted across city lines between Mankato and North Mankato. It is clear that all the subscribers involved in the order of the commissioner were located in North Mankato and that, furthermore, the telephone switching equipment and the business offices were located in the city of Mankato.

The commissioner has conceded that the word "of," in the law as presently printed, is ambiguous and susceptible of more than one interpretation. The Tax Court acceded to this view and added that the original wording of the statute must control as evidence of the legislative intent. The Tax Court suggests in its memorandum that "exchange business of" can mean either business actually taking place at some particular place, or it can mean business "arising from" or "derived from" some particular place. Relator argues that the latter in-

terpretation is the correct one. The commissioner, however, contends that, because the word "at" was used when the statute was first enacted, the legislature intended that the place where the exchange facilities building and business offices were located should control and, consequently, the higher rate must be applied. Relator also asserts that because the subscriber and certain physical equipment constitute a part of the telephone system as applied to North Mankato, the lower rate of 4 percent is applicable, even though the central facilities, the exchange building, the switching equipment, and the business offices are located in Mankato. Despite these arguments it is conceded by both parties that the intention of the legislature controls.

The commissioner offered and the Tax Court admitted a memorandum into evidence for the purpose of establishing certain administrative practices, adopted pursuant to a joint decision of the Tax Commission, the attorney general, and the state comptroller. That memorandum, dated October 18, 1937, became the basis of an administrative practice concerning the proper applicability of § 295.34, subd. 1. The memorandum considered the following question:

"Subscribers in a small city or town may, in some instances, elect to receive service from a large nearby city rather than from the small exchange in the city of his residence. Is this 'exchange business' at the small or the large city?"

The unanimous determination was that such exchange business was at the large city.

In judicial construction of statutes courts are guided by well-established rules. They cannot assume a legislative intent in plain contradiction to words used by the legislature. Loew v. Hagerle Brothers, 222 Minn. 258, 24 N. W. (2d) 278. The primary object in the interpretation of any statute is to ascertain, if possible, and to give effect to the intention of the legislature that enacted the law. Badger Dome Oil Co. v. Hallam (8 Cir.) 99 F. (2d) 293. Section 645.17(2) provides that "[t]he legislature intends the entire statute to be effective and certain." Paragraph (5) thereof provides that "[t]he legislature intends to favor the public interest as against any private interest."

The general rule is that where language is unambiguous, the clearly expressed intent must be given effect and there is no room for construction. Montgomery Ward & Co. v. Snuggins (8 Cir.) 103 F. (2d) 458; Hickok v. Margolis, 221 Minn. 480, 22 N. W. (2d) 850. In interpreting a statute, a court must construe the language so as to effectuate the legislative intent. Wheeler Lbr. B. & S. Co. v. Seaboard Surety Co. 218 Minn. 443, 16 N. W. (2d) 519; Arlandson v. Humphrey, 224 Minn. 49, 27 N. W. (2d) 819.

Ambiguous statutes may be viewed in light of conditions and circumstances surrounding their enactment to ascertain the legislative intent. North American Creamery Co. v. Willcuts (D. Minn.) 38 F. (2d) 483, appeal dismissed, (8 Cir.) 49 F. (2d) 1082. In construing a statute courts may consider the contemporaneous circumstances. Hudson v. Chicago, St. P. M. & O. Ry. Co. (D. Minn.) 226 F. 38.

In order to ascertain the legislative purpose and, if possible, interpret the act so as to accomplish such purpose, obvious mistakes and omissions may be corrected or supplied, and contradictory expressions and language of doubtful import should be given a meaning consistent with the legislative intention as disclosed by the act taken as a whole. Judd v. Landin, 211 Minn. 465, 1 N. W. (2d) 861.

Another important rule of statutory construction is that administrative interpretation of statutes, although not binding upon the courts, should receive consideration unless found to be erroneous and in conflict with the express purpose of the act and the intention of the legislature. In re Estate of Raynolds, 219 Minn. 449, 456, 18 N. W. (2d) 238, 242; Holmes v. Borgen, 200 Minn. 97, 273 N. W. 623. A longstanding administrative interpretation of a statute is entitled to great weight, although not if it is erroneous and contrary to legislative intent or if such administrative construction extends or modifies provisions of the statute. Mattson v. Flynn, 216 Minn. 354, 13 N. W. (2d) 11.

■ No one disputes that prior to the revision, Minn. St. 295.34 (Ex. Sess. L. 1937, c. 10, § 1) read "exchange business *at* all cities of the fourth class" nor is it disputed that § 295.34, subd. 1(b), as revised reads, "exchange business *of* all cities of the fourth class." (Italics

supplied.) There is no explanation available how the change of the word "at" to the word "of" came about. It was stipulated that the revisor of statutes if called as a witness would have testified that the change was not the result of deliberate action by the revisor. There is no proof that the legislature made the change intentionally.

Relator cites and relies especially on the case of State ex rel. Bergin v. Washburn, 224 Minn. 269, 28 N. W. (2d) 652, in support of its position that the administrative construction, relying as it did on the technical construction of "at," is of doubtful reliance in interpreting the statute as revised. The Bergin case, however, states (224 Minn. 272, 28 N. W. [2d] 653):

"* * * [A] revision of an existing statute is presumed not to change its meaning, even if there be alterations in the phraseology, unless such intention to change the law clearly appears from the language of the revised statute."

■ Pursuant to L. 1943, c. 545, § 1, subd. 2, and § 2, subd. 1, the revisor of statutes was directed to "make such changes in language and arrangement as he deems necessary to consolidate, clarify, simplify, and codify the statutes, and to express and give effect to the intent of the Legislature in respect of the laws embraced therein." Following completion of the general codification, the legislature on March 8, 1945, adopted and enacted it as the "Minnesota Revised Statutes," and by the act of adoption specifically provided:

"Sec. 3. The laws contained and compiled in 'Minnesota Revised Statutes' *are to be construed as continuations of the acts from which compiled and derived and not as new enactments.*"[1] (Italics supplied.)

■ In State v. Stroschein, 99 Minn. 248, 250, 109 N. W. 235, this court said:

"* * * The rules for interpretation of revised statutes or codes resolve themselves into one inquiry, applicable alike to the construction of all legislative enactments, viz., the legislative intent. If the language of the revised statutes be plain and free from doubt, the will of the

---

[1] See, Minn. St. 1965, p. 4.

lawmakers must be ascertained therefrom, unaided by prior statutes on the subject. If of doubtful meaning or import, or susceptible of two constructions, the prior statutes, of which the new is the revision, may be resorted to for the purpose of rendering the new clear. Or, as expressed by the supreme court of the United States, prior statutes may be resorted to for the purpose of solving, but not to create, an ambiguity. Hamilton v. Rathbone, 175 U. S. 414, 20 Sup. Ct. 155, 44 L. Ed. 219."

See Welscher v. Myhre, 231 Minn. 33, 42 N. W. (2d) 311, stating that this court has not in any subsequent decisions departed from the rule of State v. Stroschein, *supra.*

Before applying the principles expressed in the Stroschein case, we must ascertain whether § 295.34, subd. 1(b), as it now stands is clear and unambiguous or whether it is necessary to ascertain the meaning of the statutory language in the 1945 revision by comparison with the original wording of the prior statute upon which the revision is based.

The Tax Court in its memorandum said that the statutory language in its revised and present form is subject to a variety of interpretations. We agree that it is obviously ambiguous and therefore find ample justification for resorting to the prior statute to discover the legislative intent. Welscher v. Myhre, *supra.* Considered in its entirety, it becomes clear that the statute as now written, substituting the word *of* in place of *at,* falls short of expressing what the legislature intended. Webster's Third New International Dictionary (1961) p. 136, defines "at" as "a function word to indicate presence in, on, or near: as (1) presence or occurrence in a particular place" and the same dictionary (p. 1565) defines "of" as "used to indicate something from which position and reckoning is defined."

In State v. Connelly, 249 Minn. 429, 432, 82 N. W. (2d) 489, 492, in citing and following Welscher v. Myhre, 231 Minn. 33, 42 N. W. (2d) 311, this court said:

"In construing § 8.01 the specific question is whether the phrase '*and in all such cases he may attend upon the grand jury*' (italics supplied) applies only to requests made by the governor or applies also

when the request comes from the county attorney. If the phrase applies also to requests made by the county attorney, then the governor's written request is not always an essential prerequisite to the attorney general's appearance before the grand jury. Since the language of § 8.01 is subject to an interpretation both ways, it becomes both necessary and proper to resort to a consideration of the legislative history of this section."

The court in State v. Village of Pierz, 241 Minn. 37, 62 N. W. (2d) 498, had under consideration a situation involving an ambiguity arising out of the adoption of the 1945 revision. We there said that it is our function under the circumstances to determine the legislative intent from the language used and, as so ascertained, to give effect to it. In considering the effect of the revision on Minn. St. 215.19, we said (241 Minn. 40, 62 N. W. [2d] 500):

"It is undoubtedly true that when the legislature adopted the 1945 revision it became the law of this state. State ex rel. Bergin v. Washburn, 224 Minn. 269, 28 N. W. (2d) 652. However, where an ambiguity had arisen by virtue of a deletion, omission, or change of language, it is as much our function to ascertain the legislative intent, if we can, from the language used in the new revision as it is in those cases where we construe a single act of the legislature. We should no more ascribe to the legislature an intent to do something absurd in adopting a new revision of our laws than we would ascribe such intent where it adopts a single act. It seems to us that the legislative intent here is clear. In the first place, it was not the intention of the legislature to change existing law by the new revision."

Relator contends that because the statute here involved was adopted as a legislative revision it must be accepted as the latest word of the legislature on the subject, and that no one can go back to the wording used by the legislature in 1937, even though the change appearing in the revision may be of doubtful meaning or import, or susceptible of two constructions.

However, in view of the legislature's expressed intention that the laws contained in the revision are to be construed as continuations of the acts from which they were derived or compiled, and in view of the

ambiguity of the statute as it now reads, it is necessary and proper to seek the meaning of the statute by turning to the original enactment. That makes it clear that the 4-percent tax rate applies only to gross earnings if a telephone company's central exchange facilities and office are located in a city of the fourth class. The decision of the Tax Court holding that relator's gross earnings from services rendered to subscribers in North Mankato were taxable under Minn. St. 295.34, subd. 1(c), rather than § 295.34, subd. 1(b), was correct.[2]

We have said repeatedly that in reviewing an order of an administrative board such as the Tax Court, this court will go no further than to determine (1) whether such board kept within its jurisdiction; (2) whether it proceeded on a correct theory of law; (3) whether its action was arbitrary, oppressive, or unreasonable, and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question. Oliver Iron Min. Co. v. Commr. of Taxation, 247 Minn. 6, 76 N. W. (2d) 107; Red Owl Stores, Inc. v. Commr. of Taxation, 264 Minn. 1, 117 N. W. (2d) 401; Minn. St. 271.10, subd. 1. In our opinion the Tax Court here clearly has acted within its jurisdiction, proceeded on a correct theory of law, and was presented evidence from which it might reasonably make its determination and order affirming the order of the commissioner of taxation. Its decision is, accordingly, affirmed.

Affirmed.

---

[2] The Tax Court also indicated in its memorandum another persuasive argument in favor of its decision which was overlooked by both parties:

"* * * [I]n clause (b) the Legislature used a phraseology different from that used in clause (a). In clause (a) the Legislature said:

"'4 per cent of its gross earnings *from service to rural subscribers;*' (Emphasis supplied.)

"It is crystal clear that in this clause the Legislature intended to impose a four per cent tax on revenues derived from rural subscribers. * * * [T]he Legislature could have used the same phraseology in clause (b), but it chose to use a different phraseology. Because the Legislature chose to use a different phraseology [in the original statute] we conclude that it must have intended an application different from that in the first clause."

OTIS, JUSTICE (dissenting).

The original version of Minn. St. 295.34 imposed a tax on "gross earnings from exchange business *at* all cities of the fourth class."[1] (Italics supplied.) Sometime before 1941, however, the word "at" was changed to "of." Though much of the discussion in the briefs is devoted to whether "at" or "of" correctly represents the will of the legislature, in my opinion the meaning is disclosed, not in the preposition, but in the words which precede it.

Looking to the three categories of earnings listed in the statute, it appears that the legislature graduated the tax according to the size of the communities served and not according to the size of the company.[2] Service to rural subscribers and "exchange business at" small municipalities are taxed at a rate of 4 percent. All other business, including service to subscribers in larger communities, is taxed at 7 percent. The rate therefore appears to be dependent on population. The statute also reveals the kind of business which determines the rate when the exchange is in one community and the subscribers are in another.

In enacting § 295.34, the legislature did not impose the 4-percent tax on "earnings from *exchanges* located in all cities of the fourth class," but rather, it applied the 4-percent rate to earnings from *exchange business,* that is, business at exchanges at all cities of the fourth class. The word "at" may have a geographical connotation, but as I construe the statute the reference is intended to apply to the location of the *business,* not to the location of the *exchange.* It seems likely the purpose was to encourage service to small communities without reference to location of the exchanges. This would tend to reduce losses in service to sparsely settled areas where company costs are inevitably higher. In any case, no reason has been advanced why the location of exchanges was a matter of concern to the legislature. The purpose suggested is in harmony with the express language of the statute. Both indicate that the location of the *subscribers* was intended to be decisive.

The Tax Court emphasized the fact that the legislature used the term

---

[1] Ex. Sess. L. 1937, c. 10.

[2] The rate of taxation was not geared to the amount of earnings, for example.

"service to rural subscribers" in clause (a) of § 295.34, subd. 1, and "exchange business at [of] all cities of the fourth class" in clause (b). In this connection relator argues as follows:

"* * * 'Service' characterizes one sort of earnings. 'Exchange business of' characterizes another. 'Service' conveys an intent only to tax those gross earnings from rural subscribers arising directly from telephone service. In the case of fourth class cities which provide a more sophisticated form of service all exchange business is taxed. * * * In short the Legislature intended to tax a different quantum of gross earnings in the case of rural subscribers from that which they intended to tax in the case of fourth class cities and villages. In more populous areas all gross earnings, of any kind, are taxed under clause (c) of the statute."

Relator also cites a 1937 memorandum of the tax commissioner to the effect that directory advertising and listings are included in exchange *business* but not in *service* to rural subscribers.

At issue in this case are revenues which are conceded to be derived from the exchange business of a city of the fourth class. Hence, as I read § 295.34, subd. 1(b), the 4-percent rate should apply without reference to the physical location of the exchange — which to me appears to be an irrelevant consideration — rendering the application of the 7-percent rate erroneous.

SHERAN, JUSTICE (dissenting).

After reading the dissent, I am persuaded that the language of the statute is so ambiguous that the doubt should be resolved in favor of the taxpayer. Therefore, I would reverse.