**STATE of Minnesota, Respondent,**

**v.**

**Abdelhamid (NMN) MAIDI,
petitioner, Appellant.**

No.  C9–93–1955.

Supreme Court of Minnesota.

Sept. 15, 1995.

---

John M. Stuart, Minnesota State Public Defender, Bradford Colbert, L.A.M.P., St. Paul, for appellant.

Hubert H. Humphrey, III, Attorney General, St. Paul, James Backstrom, Dakota County Attorney, Stuart E. Shapiro, Asst. Dakota County Attorney, Hastings, for respondent.

## OPINION

STRINGER, Justice.

On June 3, 1993, appellant, an Algerian citizen, was convicted of two counts of interfering with parental or custodial rights in violation of Minn.Stat. § 609.26, subd. 1(4) and (6) (1994) after taking his two minor children to Algeria in violation of a Stipulation for Temporary Relief. Appellant argues the sentencing court erred in imposing upon appellant, in addition to a sentence of six months incarceration under a stay of imposition of sentence and probation for two years on each count, a restitution order for $147,-251.27,[1] representing expenses incurred by the children's mother in "counter-abducting" the children from Algeria. The court of appeals affirmed the conviction and restitution order. *State v. Maidi*, 520 N.W.2d 414 (Minn.App.1994). This court granted appellant's petition for further review solely on the issue of restitution. We affirm.

Appellant and A.M., an American citizen, met at the University of Cannes in the fall of 1983. In July 1984, they were married in Minneapolis, Minnesota. A daughter was born in June 1985, and the following August the family moved to Algeria. A son was born in Algeria in June 1988. Both children have dual United States and Algerian citizenship. In December 1989, A.M. and the children returned to Minnesota where appellant joined them in April 1990.

In July 1991, appellant moved to Indiana where his brother resides. A.M. and the children remained in Minnesota because A.M. "didn't think that [moving] would be the best thing for myself or my children or my marriage." Appellant visited the children in Minnesota at the end of August 1991 for

---

1. As the court of appeals observed, the sentencing court set restitution at $147,527.27. The record indicates A.M.'s expenses totaled $147,-251.27. The court of appeals modified the clerical error accordingly. *State v. Maidi*, 520 N.W.2d 414, 416 n. 1 (Minn.App.1994). Henceforth, the restitution award will be cited in accordance with the court of appeals' modification.

several weeks. After appellant returned to Indiana, A.M. discovered the children's Algerian and United States passports were missing. Appellant initially denied, but later admitted taking them.

In October 1991, appellant and A.M. agreed to divorce and that A.M. would commence the divorce proceeding because appellant had not yet established residency in Indiana. Appellant requested liberal visitation privileges and A.M. verbally agreed appellant could take the children to Indiana during a school holiday from Monday, October 14, 1991 through Friday, October 18, 1991.

The week before appellant arrived to take the children, A.M. spoke with her attorneys about her concern that appellant might seek to keep the children in Indiana. Her lawyers advised her to execute a Stipulation for Temporary Relief and to serve the divorce papers on appellant when he returned to Burnsville, Minnesota.

Upon appellant's arrival in Burnsville on Friday, October 11, 1991, he returned the children's United States passports to A.M., but retained their Algerian passports. The next day, Saturday, October 12, appellant was served with the Summons and Petition for divorce, and appellant and A.M. reviewed the Stipulation for Temporary Relief. Appellant objected to a provision prohibiting either party from removing the children from the continental United States. After telephone consultation with A.M.'s attorneys, the parties altered the Stipulation to require appellant to return the children's American passports to A.M. and to specifically provide for a week of visitation in Indiana, subject to the condition that appellant return the children to their mother in Minnesota by midnight on October 20, 1991. Appellant and A.M. thereupon signed the Stipulation and initialed the alterations on Sunday, October 13, 1991.

On Monday, October 14, 1991, appellant and the children, then ages six and three, left for Indiana. Appellant called A.M. from Indiana the next day and asked her to wire money to Algeria, stating he would pay her back when he returned the children at the end of the week; A.M. wired $1,200 to Algeria.

On Saturday, October 19, 1991, the day before appellant was required to return the children as provided in the Stipulation, appellant left a message at A.M.'s parents' home indicating he could be reached at his family's home in Algeria. When A.M. telephoned appellant in Algeria, appellant told her he intended to keep the children in Algeria, that she "was no longer their mother, and that [she] should start a new life and forget about them."

At trial, the state introduced a series of letters from appellant to A.M. written while appellant and the children were in Algeria. The letters encouraged A.M. to return to Algeria, but clearly indicated he would not permit her to return with the children to the United States. While the trial court did not explore in depth the avenues pursued by A.M. to recover her children, it appears from the record that she was advised through legal counsel in Minnesota, France, and Algeria, and through the Algerian Desk at the U.S. State Department, that no international treaties honoring her parental rights were applicable as to Algeria, and under Algerian law, the children would not be permitted to leave the country without their father's consent.

A.M. thereupon contacted the "International Program Group," a team of former CIA and FBI special forces agents, and retained them to recover her children from Algeria. After an initial aborted attempt, the counter-abduction succeeded and A.M. ultimately regained custody of the children in April 1992. A.M.'s parents financed their daughter's efforts to contact and retrieve the children, at a cost of approximately $141,-527.72. Appellant voluntarily returned to the United States to face charges in November 1992.

The trial court found appellant guilty of two counts of depriving another of custodial or parental rights in violation of Minn.Stat. § 609.26, subd. 1(4) and (6) and referred the matter to Dakota County Community Corrections for a presentence investigation. The presentence investigation report, issued prior to the receipt of the victim's affidavit of

restitution, initially recommended restitution in the amount of $10,000, payable in $200 per month installments. On August 24, 1993, the court sentenced appellant to six months in jail under a stay of imposition of sentence and placed appellant on probation for two years for each count, subject to several conditions, among them:

> [Defendant] is to pay restitution as determined by Community Corrections on a schedule to be determined by Community Corrections to pay at least $200.00 per month towards restitution during the period of probation. Any sum which remains unpaid at the termination of probation shall be entered as a civil judgment against this defendant.

In a letter to the court dated September 1, 1993, Community Corrections recommended restitution in the amount of $5,723.55, on the theory that while reimbursement for the counter-abduction expenses was appropriate, A.M.'s decision to incur these expenses was her own personal choice and her recovery should be pursued through the civil court system.[2] The court ordered a restitution hearing.

At the restitution hearing on November 8, 1993, the court found that the counter-abduction expenses properly qualified as restitution pursuant to Minn.Stat. § 611A.04, subd. 1, and ordered restitution in the amount of $147,527.27, plus future losses for counseling for A.M. or the children. Based on the court's finding that appellant earned $6.50 per hour, the court ordered appellant to pay restitution in installments of $200 per month until the sum is paid in full.

The court of appeals affirmed the conviction and the restitution order, holding that counter-abduction expenses properly qualify as criminal restitution pursuant to Minn.Stat. § 611A.04. *State v. Maidi*, 520 N.W.2d 414, 418 (Minn.App.1994). This court granted appellant's petition for review on the issue of restitution.

Appellant does not contest the dollar amount of restitution. Rather, he argues that the restitution order is inappropriate for three reasons: (1) the sentencing court erred in disregarding Community Corrections' restitution recommendation; (2) for public policy reasons, "counter-abduction" expenses should not qualify for restitution pursuant to Minn.Stat. § 609.26, subd. 4 and Minn.Stat. § 611A.04; and (3) the sentencing court failed to properly consider appellant's ability to pay as required by Minn.Stat. § 611.045, subd. 1.

■ As to appellant's first argument that the sentencing court was bound to adopt Community Corrections' restitution recommendation, appellant alleges that "the court did not have the authority to increase the amount of restitution ordered beyond what had been determined by Community Corrections."

■ Minnesota Statute § 609.135 (1994) governing stays of imposition or execution of sentences clearly provides that restitution is an intermediate sanction. Thus, while the court may designate an agent to seek information regarding the proper amount of restitution pursuant to Minn.Stat. § 611A.04, subd. 1(a) (1994), the court cannot delegate its authority to impose restitution. *State v. Henderson*, 527 N.W.2d 827, 829 (Minn.1995) (holding that Special Supervision Program "is an intermediate sanction within the meaning of Minn.Stat. § 609.135 [and] * * * is therefore beyond the authority of the Corrections Department to impose"). Consequently, the sentencing court did not err in disregarding Community Corrections' restitution recommendation.

■ Appellant's second argument is the pivotal issue before the court—whether the restitution of "counter-abduction" expenses meets the criteria for restitution under Minn. Stat. §§ 609.26, subd. 4 and 611A.04. We conclude that the restitution order was proper in this respect.

Restitution is a permissible provision in a sentence for conviction of depriving another of custodial or parental rights in violation of Minn.Stat. § 609.26. Minn.Stat. § 609.10(5)

2. Community Corrections was apparently unaware of our opinion in *Larson v. Dunn*, 460 N.W.2d 39 (Minn.1990), holding that Minnesota does not recognize a tort action for expenses incurred as a result of deprivation of parental rights.

(1994). The restitution statute, Minn.Stat. § 611A.04 (1994), provides in pertinent part as follows:

> A victim of a crime has the right to receive restitution as part of the disposition of a criminal charge or juvenile delinquency proceeding against the offender if the offender is convicted or found delinquent. The court, or a person or agency designated by the court, shall request information from the victim to determine the amount of restitution owed. * * * Information submitted relating to restitution must describe the items or elements of loss, itemize the total dollar amounts of restitution claimed, and specify the reasons justifying these amounts, if restitution is in the form of money or property. *A request for restitution may include, but is not limited to, any out-of-pocket losses resulting from the crime,* including medical and therapy costs, replacement of wages and services, and funeral expenses.

Minn.Stat. § 611A.04, subd. 1(a) (1994) (emphasis added). Indeed, more germane to the facts of this case, the legislature has specifically expressed its intent that victims of parental abduction recover costs incurred in recovering abducted children. Minn.Stat. § 609.26, subd. 4 provides: "In addition to any sentence imposed, the court may assess *any expense incurred in returning the child* against any person convicted of violating this section." Minn.Stat. § 609.26, subd. 4 (1994) (emphasis added).

■ The broad language of Minn.Stat. § 609.26, subd. 4 strongly indicates a legislative intent to give wide discretion to the sentencing court when ordering restitution of expenses incurred in returning a child to the custodial parent. Clearly, the legislature could have limited the sentencing court's discretion by drafting Minn.Stat. § 609.26, subd. 4 to provide for "any *reasonable* expenses" as other state legislatures have done.[3] Instead, our legislature chose not to use such a modifier to limit the scope of recoverable expenses under section 609.26, subd. 4, and the statute clearly and unambiguously provides the sentencing court with discretion to assess *any* expense incurred in returning the child. We have long held that where a statute's meaning is clear, as we conclude it is in the present case, there is no room for judicial construction. *Arlandson v. Humphrey,* 224 Minn. 49, 27 N.W.2d 819 (1947); *see* Minn. Stat. § 645.16 (1994). Thus, the court may not construe the statute to exempt certain types of expenses, even though we may consider these expenses inappropriate. To do so in the present case would run contrary to the clear language of both sections 611A.04 and 609.26, delegating the decision to the sentencing court. We therefore decline to interpret the statute to exclude the counter-abduction expenses ordered by the sentencing court, and we conclude that the order of restitution was within the sentencing court's discretion.

Our broad reading of Minn.Stat. § 609.26, subd. 4 is consistent with the established policy objective of both the state and federal government to deter parental abduction,[4] and

3. *See* N.J.Stat.Ann. § 2C:13–4(f)(1) (West Supp. 1995) ("[A] person convicted [of interference with custody] shall make restitution of *all reasonable expenses and costs,* including reasonable counsel fees, incurred by the other parent in securing the child's return.") (emphasis added); Wash.Rev.Code Ann. § 9A.40.080 (West Supp. 1995) ("[A]ny *reasonable expenses* incurred in locating or returning a child * * * shall be assessed against a defendant convicted [of custodial interference].") (emphasis added); Wis.Stat. Ann. § 948.31(6) (West Supp.1994) (regarding interference with custody by parent, permitting a court to order reimbursement "for *any reasonable expenses* incurred by any person or any governmental entity in locating and returning the child") (emphasis added); *see also Vanness v. State,* 605 N.E.2d 777, 782–83 (Ind.Ct.App.1992) (noting that Ind.Code § 35–42–3–4 (1990) provides that "a court may impose against the de-

fendant *reasonable costs* incurred by a parent * * * because of the taking * * * of the child") (emphasis added); *State v. Vinyard,* 50 Wash. App. 888, 751 P.2d 339, 342 (1988) (noting that Wash.Rev.Code § 9A.40.080 requires a person convicted of interfering with custodial rights to reimburse "reasonable expenses" incurred in recovering the child), *modified in part on other grounds, State v. Davison,* 116 Wash.2d 917, 809 P.2d 1374 (1991). *But see* Or.Rev.Stat. § 163.257(2) (1993) ("Expenses incurred by a lawful custodial parent * * * in locating and regaining physical custody of the person taken, enticed or kept in violation of this section [custodial interference] are "pecuniary damages" for purposes of restitution * * *.").

4. Congress enacted the Parental Kidnapping Prevention Act (PKPA) in 1980. 18 U.S.C. § 1073

with the broad discretion of trial judges to protect custodial and visitation rights. *Larson v. Dunn*, 460 N.W.2d 39, 47 (Minn.1990) (citing *Tischendorf v. Tischendorf*, 321 N.W.2d 405 (Minn.1982) (upholding trial judge's requirement that a noncustodial parent post bond before taking a child overseas for extended visitation), *cert. denied*, 460 U.S. 1037, 103 S.Ct. 1426, 75 L.Ed.2d 787 (1983)). This court explicitly recognized the importance of Minn.Stat. § 609.26 in assisting victims of parental abductions because parents like A.M. do not have a civil cause of action for tortious interference with custodial rights. *Larson*, 460 N.W.2d at 47. In *Larson* we specifically noted that Minn.Stat. § 609.26 permits trial judges to impose costs incurred by the custodial parent in recovering a child. *Id.* at 46.

We also note, however, that this case raises concerns regarding whether the effect of this court's affirmance of a restitution order that includes counter-abduction expenses effectively condones conduct potentially violative of another nation's laws. Although we do not condone such violations, this court is bound by the clear language of the statute enacted by the legislature, which does not provide an exception on such a basis. Indeed, it is the legislature's, and not this court's, responsibility to provide such exceptions to the statute.

■ Finally, appellant argues that the sentencing court abused its discretion by ordering restitution in the amount of $147,-251.27, payable in $200 per month installments, when appellant earns only $6.50 per hour and mathematically can never pay off the full restitution order at the monthly installment payment ordered. Pursuant to Minn.Stat. § 611A.04, subd. 3, the order of restitution was docketed as a civil judgment. Thus, interest accrues on the unpaid balance pursuant to Minn.Stat. § 549.09, at a rate greater than appellant's monthly payments. Therefore, appellant argues, the sentencing court neglected to consider his ability to pay as required by Minn.Stat. § 611A.045, subd. 1 (1994):

> The court, in determining whether to order restitution and the amount of restitution, shall consider the following factors:
>
> (1) the amount of economic loss sustained by the victim as a result of the offense; and
>
> (2) the income, resources, and obligations of the defendant.

Minn.Stat. § 611A.045, subd. 1 (1994).

■ The court of appeals affirmed the restitution award reasoning that the sentencing court properly considered appellant's ability to pay when it ordered $200 per month installments. *State v. Maidi*, 520 N.W.2d 414, 419 (Minn.App.1994). We agree. Minnesota Statute § 611A.045 is not explicit as to how the court must consider the income, resources, and obligations of the appellant when imposing the restitution order. In view of Minn.Stat. § 611A.04, subd. 1(c),[5] however, which permits the court to order partial restitution while permitting the full amount of restitution to be docketed as a civil judgment, we conclude that the legislature intended to give the courts wide flexibility to

---

(1988), 28 U.S.C. § 1738A (1988); 42 U.S.C. §§ 654, 655, 663 (1988). The Minnesota legislature first addressed parental abduction in 1963 when it created a felony level offense for parents who abduct their children with the intent to interfere with custodial rights. Act of May 17, 1963, ch. 753, § 609.26, 1963 Minn.Laws 1185, 1203–04, *codified at* Minn.Stat. § 609.26 (1994); *Olsen v. State*, 287 Minn. 536, 538–39, 177 N.W.2d 424, 427 (1970) (upholding statute against constitutional challenge); *see also* Daniel Oberdorfer, Comment, *Larson v. Dunn: Toward a Reasoned Response to Parental Kidnapping*, 75 Minn.L.Rev. 1701, 1710 n. 57 (1991).

**5.** Minn.Stat. § 611A.04, subd. 1(c) provides in pertinent part as follows:

The court shall grant or deny restitution *or partial restitution* and shall state on the record its reasons for its decision on restitution if information relating to restitution has been presented. *If the court grants partial restitution it shall also specify the full amount of restitution that may be docketed as a civil judgment under subdivision 3.* The court may not require that the victim waive or otherwise forfeit any rights or causes of action as a condition of granting restitution or partial restitution.

Minn.Stat. § 611A.04, subd. 1(c) (1994) (emphasis added). The legislature added this provision during the same session it enacted Minn.Stat. § 611A.045, subd. 1 in its current form. Act of Apr. 4, 1989, ch. 21, § 4(c), 1989 Minn.Laws 38, 41.

structure restitution orders that take into account a defendant's ability to pay, including, as the court did here, a reduced monthly payment that is within the defendant's means.

This interpretation is consistent with the legislative history of Minn.Stat. § 611A.045, subd. 1, which indicates the restitution statute was primarily intended to compensate victims.[6] Construing Minn.Stat. § 611A.045, subd. 1 to permit a large restitution award, provided the court considers the defendant's resources when imposing a payment schedule, is also consistent with this court's holding in *State v. Fader*, 358 N.W.2d 42 (Minn. 1984). In *Fader*, we held that while restitution may have the dual purpose of rehabilitating the defendant and compensating the victim, the primary purpose is to compensate victims. *Id.* at 48.

Consequently, we conclude that the sentencing court properly considered the appellant's resources when it applied Minn.Stat.

§ 611A.045, subd. 1. The decision of the court of appeals is affirmed.

Affirmed.

PAGE, Justice (dissenting).

I respectfully dissent. The court today holds that under Minnesota law an individual may receive restitution for expenses incurred in the counter-abduction of children from a sovereign nation, even though there is a substantial likelihood that the counter-abduction violated the law of that sovereign nation. We shall all rue the day that this state condones, if not encourages, the violation of the laws of a sovereign nation.

TOMLJANOVICH, Justice (dissenting).

I join in the dissent of Justice Page.

---

6. *See* Hearing on H.F. 14, H.Jud.Comm., 76th Minn.Leg., Jan. 9, 1989 (audio tape # 1) (comments of Fern Sepler, Executive Director of Crime Victim and Witness Advisory Council, introduced by Rep. Kelly, House sponsor of the bill); Hearing on S.F. 51, S.Jud.Comm., Crim. L.Div., 76th Minn.Leg., Jan. 25, 1989 (audio tape) (comments of Fern Sepler, introduced by Sen. Spear, Senate sponsor of the bill).

Introducing the bill, Representative Kelly stated that the provisions permitting partial grants of restitution with the remainder entered as a civil judgment were intended to provide a "backstop" for an offender's acquisition of "unanticipated wealth" such as the lottery. *See* Hearing on H.F. 14 (comments of Rep. Kelly). When Ms. Sepler testified before the Senate, she emphasized that the civil judgment was intended to enable a victim to pursue full restitution in the event a defendant gained "unexpected wealth or [a] windfall." Hearing on S.F. 51, S.Jud.Comm., Crim.L.Div., 76th Minn. Leg., Jan. 25, 1989 (audio tape) (comments of Fern Sepler, introduced by Sen. Spear, Senate sponsor of the bill).