**Delvin POTUCEK, Relator,**

v.

**CITY OF WARREN, Self-insured, and Berkley Administrators, Respondents.**

**No. C8–95–624.**

Supreme Court of Minnesota.

Aug. 4, 1995.

---

Jeffrey W. Jacobs, Wilkerson, Lang and Hegna, Bloomington, for relator.

Leslie M. Altman, Karen Imus Johnson, Rider, Bennett, Egan & Arundel, P.L.L.P., Minneapolis, for respondents.

## OPINION

COYNE, Justice.

We review on certiorari a decision of the Workers' Compensation Court of Appeals reversing the compensation judge's calculation of the government benefits offset provided to an employer pursuant to Minn.Stat. § 176.101, subd. 4 (1994).[1] We reverse and reinstate the decision of the compensation judge.

Delvin W. Potucek, a laborer in the Street Department of the City of Warren, sustained a compensable injury on February 14, 1990, and has been permanently totally disabled since August of that year. The employer paid permanent total disability benefits to $25,000, and became eligible for the offset provided by section 176.101, subd. 4. Meanwhile, Potucek made application to the Public Employee's Retirement Association (PERA) for disability benefits which were calculated on the basis of his election of a joint and survivor benefit pension plan. The compensation judge said that the section 176.101, subd. 4 offset was based on the joint and survivor benefit amount—the "benefits being paid" by PERA to the employee. On appeal, the WCCA reversed, deciding the offset should be calculated on the single life amount:

> Minn.Stat. § 176.101, subd. 4, should be construed, in the context of an offset from PERA benefits, in such a way as to defer to the PERA statute's actuarial approach in valuing "disability benefits being paid." We, therefore, conclude that the self-insured employer has overpaid permanent total disability benefits to the extent that the offset taken was based on the PERA

---

1. Minn.Stat. § 176.101, subd. 4 provides that permanent total disability benefits "shall be paid during the permanent total disability of the injured employee but after a total of $25,000 of weekly compensation has been paid, the amount of the weekly compensation benefits being paid by the employer shall be reduced by the amount of any disability benefits being paid by any government disability benefit program if the disability benefits are occasioned by the same injury or injuries which give rise to payments under this subdivision."

disability checks actually received by the employee instead of the actuarial value of the normal plan single-life annuity, consistent with Minn.Stat. § 353.33, subd. 5.

*Potucek v. City of Warren,* —— Workers' Comp.Dec. —— (WCCA, filed March 7, 1995) (slip op. at 7) (footnote omitted).[2]

Pursuant to Minn.Stat. § 353.33, subd. 3a, a disabled PERA member may elect to receive, in lieu of a full or "normal single life" annuity payable to him during his life, a "joint and survivor optional annuity," *i.e.,* a reduced monthly benefit, with monthly benefits payable after the disabled member's death to a named beneficiary. In the event the named beneficiary predeceases the member, the member's benefits immediately "bounce back" to that of a normal single life annuity. The optional annuities are actuarially equivalent to the normal single life annuities, Minn.Stat. § 353.30, subd. 3; the election of an optional annuity must be made prior to commencement of the payment of the disability benefit; and the optional annuity begins to accrue on the same date as provided for the disability benefit, Minn.Stat. § 353.33, subd. 3a. Under Minn.Stat. § 353.27, subd. 2, there is deducted 8.23 percent of a "basic" member's total salary and 4.23 percent of a "coordinated" member's total salary, and these sums are deposited in the state treasury to the credit of the public employees retirement fund from which annuities, refunds and allowances are paid as provided in the Act.[3] By Minn.Stat. § 353.15, annuities are not assignable or subject to execution, levy, attachment, garnishment, or other legal process, with the exceptions provided in subdivision 2 of Minn.Stat.

§ 353.15, or Minn.Stat. §§ 518.58, 518.581, or 518.611.

PERA disability benefits are coordinated with "any amounts received or receivable under workers' compensation law," after deduction for attorney fees; and PERA benefits are to be calculated as follows:

If the total of the single life annuity actuarial equivalent disability benefit and the workers' compensation benefit exceeds: (1) the salary the disabled member received as of the date of the disability or (2) the salary currently payable for the same employment position or an employment position substantially similar to the one the person held as of the date of the disability, whichever is greater, the disability benefit must be reduced to that amount which, when added to the workers' compensation benefits, does not exceed the greater of the salaries described in clauses (1) and (2).

Minn.Stat. § 353.33, subd. 5. This provision sets the maximum combined payment of PERA and workers' compensation benefits. For example, if a PERA member's weekly wage at the date of injury was $600, the member-employee's workers' compensation benefits would be $400 and his maximum weekly PERA disability benefit would be $200. If the member's weekly PERA benefit, calculated as a normal single life annuity, were $350, that benefit would be reduced to $200 per week. But if the member's weekly PERA benefit, calculated pursuant to the joint and survivor option, were $150, that weekly benefit would be unaffected because it is less than the maximum allowable benefit. On the other hand, if the weekly PERA benefit, calculated as a normal single life

**2.** In a letter to Berkley Administrators, a PERA disability specialist said that the employee began receiving PERA disability benefits at a monthly rate of $319.18. The effective date of those benefits was October 12, 1991. He continued to receive that amount through December 31, 1991. From January 1 through March 31, 1992, his monthly rate was $275.11. From April 1 through December 31, 1992, his monthly rate was $550.23. From January 1 through February 13, 1993, his monthly rate was $814.36. From February 14, 1993, through the present he is currently drawing $767.26 per month.
This benefit is a reduced benefit due to the fact that he had covered his spouse for survivor

benefits. If Mr. Potucek would not have done so, his normal full annuity as of October 12, 1991, would have been $1,669.84. That benefit would have been payable through December 31, 1992. Effective January 1, 1993, he would have received an increase to $1,720.52. Effective January 1, 1994, he would be receiving $1,824.04.

**3.** "Coordinated" members are those entitled to federal social security benefits; "basic" members are those who are not eligible for federal social security benefits. Minn.Stat. § 353.01, subds. 32–33.

annuity, were $500 and the weekly benefit calculated pursuant to the joint and survivor option were $225, the weekly PERA benefit payable under either option would be limited to $200.

 In contrast, section 176.101, subd. 4 contemplates a simple dollar-for-dollar reduction in the "amount of the weekly compensation benefits being paid by the employer" by the "amount of any disability benefits being paid by any government disability benefit program * * *." In our opinion, Potucek's position—that "benefits being paid" refers to monetary sums disbursed to an employee—is supported by *Teske v. Young*, 309 N.W.2d 753 (Minn.1981) where we said that the term "compensation * * * paid" in section 176.101, subd. 4 means compensation "actually paid." *Id.* at 755.

 In recognition that workers' compensation is but one element of a system of wage-loss protection, the Minnesota legislature early on provided a means for coordinating workers' compensation with the federal social security system [4] and the state pension system. At the same time, it must be remembered that workers' compensation and retirement programs are based upon entirely different considerations so that offsets aimed at preventing duplicate benefits must be read with the basic purposes of each system in mind. As Professor Larson explains:

> Some states put the beneficiaries to an election between their compensation and pension rights. But in the absence of such express statutory election or offset provisions, and under the familiar provision forbidding reduction of compensation because of other income or benefits, the benefits of both a public pension law and a compensation act can be simultaneously drawn. Moreover, statutory offsets are to be confined to the exact recipient specified; thus, an offset applicable by statute to an employee will not reduce benefits to his widow, and an offset applicable to a widow will not reduce benefits to dependent children.

4 Arthur Larson, The Law of Workmen's Compensation § 97.41(c) (1995) (footnotes omitted). While section 176.101, subd. 4 furnishes an offset for government benefits being paid, we see nothing in that provision that justifies calculating the amount of the offset for government benefits on an actuarial basis rather than the amount of government benefits actually being paid. Furthermore, it seems to us that an employee ought not be required to subsidize the workers' compensation system by requiring him to forgo a retirement and disability option that the employer is obligated by statute to make available. We therefore reverse the decision of the WCCA and reinstate the decision of the compensation judge.

Reversed and compensation judge's decision reinstated.

The employee is awarded $400 in attorney fees.

STRINGER, Justice, concurring specially.

I concur in the result. I agree the plain meaning of the phrase "benefits being paid" in Minn.Stat. § 176.101, subd. 4 (1994) refers to benefits paid directly to an injured employee and cannot be more broadly construed to mean the *value* of a benefit received. *See Teske v. Young*, 309 N.W.2d 753, 755 (Minn. 1981). However, I believe today's result is an anomaly and at odds with the provisions relating to disability benefits available under the Minnesota Public Employees Retirement Association (PERA), Minn.Stat. § 353.01 *et seq.*

The Workers' Compensation Laws seek to establish an even-handed structure for similarly situated injured employees. Here, the application of Minn.Stat. § 176.101, subd. 4 results in a significantly greater benefit to this injured employee than to other, similarly situated employees who do not select the joint and survivor's annuity. In addition, under the Workers' Compensation Act, the legislature has defined specific benefit provisions for dependents in the event of an injured worker's death. Nowhere among these

---

**4.** In 1981, Congress passed an amendment effectively precluding the adoption of state offsets for the future, but not affecting any such offset a state had previously adopted. Pub.L. No. 97–35, 95 Stat. 357, *amending* 42 U.S.C. § 424a; *see* 4 Larson, The Law of Workmen's Compensation, § 97.35(a) (1995).

dependent benefit provisions does the legislature require an employer to pay increased permanent total disability benefits to subsidize or otherwise fund a joint and survivorship annuity. The practical effect of tody's holding is to do just that. Moreover, Minn. Stat. § 353.33 (1994), which provides for disability benefits under PERA, establishes a policy directly contrary to the result we reach today. Minn.Stat. § 353.33, subd. 5 mandates the coordination of disability benefit payments under PERA with benefits received pursuant to the Workers' Compensation Act, but, significantly, requires the benefits be coordinated at the actuarial equivalent of the total single life annuity, regardless of whether another annuity option was in fact selected by the disabled PERA member.

In my opinion, the Workers' Compensation Court of Appeals raised legitimate concerns about the interrelationship of the Workers' Compensation Laws and PERA. However, as the apparent discrepancy is something properly addressed by the legislature, I concur in the court's holding.