**James J. ENGVALL, Plaintiff,**

v.

**SOO LINE RAILROAD COMPANY, d/b/a Canadian Pacific Railway Company, defendant and third-party plaintiff, petitioner, Appellant,**

v.

**General Motors Corporation, a foreign corporation, third-party defendant, Respondent.**

No. C6–99–64.

Supreme Court of Minnesota.

Feb. 17, 2000.

Eric J. Magnuson, Jeffrey R. Schmidt, Peter Gray, Rider, Bennett, Egan & Arundel, LLP, Minneapolis,for appellant.

Mickey W. Greene, Hanson, Marek, Bolkcom & Greene, Ltd., Minneapolis, Thomas J. Sweeney, Mark E. Gebauer, Eckert, Seamans, Cherin & Mellott, LLC, Harrisburg, PA, for respondent.

## OPINION

PAUL H. ANDERSON, Justice.

Appellant Soo Line Railroad Company challenges the Minnesota Court of Appeals' dismissal of its appeal from a final judgment of the Hennepin County District Court. Before entering final judgment, the district court had granted respondent General Motors Corporation's (GM) motion for summary judgment on the grounds of federal preemption. The court of appeals characterized the grant of summary judgment as an immediately appealable interlocutory judgment that was based on a lack of subject matter jurisdiction. The court of appeals then held Soo Line's appeal untimely because it appealed from the final judgment rather than the summary judgment. We reverse.

In the early morning hours of November 6, 1996, plaintiff James Engvall allegedly was injured while tying down, or applying, a handbrake on an SD–60 locomotive in the scope of his employment with Soo Line. In March 1997, Engvall commenced an action against Soo Line alleging that while he was using a handwheel to apply the handbrake, the mechanism slipped, causing his back injury. In his complaint, Engvall asserted that Soo Line had been negligent under the Federal Employers' Liability Act (the FELA), 45 U.S.C. §§ 51–60 (1997), and the Locomotive Inspection Act ((the LIA), formerly known as the Boiler Inspection Act (BIA)), 49 U.S.C. §§ 20701–20703 (1997).[1]

Soo Line answered Engvall's complaint and, in turn, filed a third-party complaint against GM, the locomotive's manufacturer. In its third-party complaint, Soo Line asserted state common law claims, specifically alleging that GM failed to use reasonable care in designing and manufacturing the locomotive's handbrake, thereby ren-

---

1. In his first count, Engvall alleged violation of the FELA, and in his second count, he alleged violation of the LIA. The FELA holds railroads liable for employees who are injured because of employer negligence. *See* 45 U.S.C. § 51 (1997). The LIA does not confer any right of action on injured employees, but imposes an absolute requirement that employers provide safe equipment. *See* 49 U.S.C. § 20701(1) (1997). The Unites States Supreme Court has construed the LIA as being essentially a FELA amendment. *See Urie v. Thompson,* 337 U.S. 163, 189, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949). Consequently, proof that the employer violated the LIA is sufficient to show negligence as a matter of law under the FELA. *See id.*

dering the handbrake defective and unreasonably dangerous. Soo Line claimed that under Minnesota law it would be entitled to contribution and indemnity from GM if Engvall recovered from Soo Line.

In its amended answer to Soo Line's third-party complaint, GM raised the affirmative defense that federal law preempted Soo Line's state common law contribution and indemnification claims. GM moved for summary judgment on the basis of this defense. By an order dated July 28, 1998, the district court granted GM's motion, concluding that the LIA preempted Soo Line's state claims against GM. Judgment was entered on August 13, 1998 on Soo Line's third-party complaint. Because claims involving other parties remained pending, this was an interlocutory rather than final judgment.

Two months later, in October 1998, all of Engvall's claims against Soo Line were dismissed pursuant to a stipulation. Final judgment was entered on October 12, 1998. Soo Line then filed a notice of appeal with the court of appeals on January 8, 1999 contesting the district court's dismissal of its claims against GM. The court of appeals questioned whether Soo Line's appeal was timely. The court asked both GM and Soo Line to respond to specific questions regarding whether grants of summary judgment based on federal preemption are immediately appealable.

After receiving responses from both parties, the court of appeals concluded that when the district court granted GM's summary judgment motion based on federal preemption, the district court "in effect ruled that [the court] lacked subject-matter jurisdiction to hear [Soo Line's] third-party claims because federal law totally occupies the field." *Soo Line R.R. Co. v. General Motors Corp.*, No. C6–99–64

(Minn.App. Mar. 16, 1999). The court of appeals went on to conclude that dismissal for lack of subject matter jurisdiction is immediately appealable even when the district court does not expressly determine, pursuant to Minn. R. Civ. P. 54.02, that there is no just reason for delay to allow an immediate interlocutory appeal. The court then reasoned that because the time to appeal began to run on August 13, 1998, the date that the interlocutory judgment dismissing GM was entered, the time to appeal expired 90 days later, on November 12. *See* Minn. R. Civ.App. P. 104.01 (1998).[2] Accordingly, the court held Soo Line's January 8, 1999 appeal untimely.

In reaching its conclusion that the district court order granting GM's summary judgment motion was immediately appealable, the court of appeals relied on our opinion in *McGowan v. Our Savior's Lutheran Church*, 527 N.W.2d 830 (Minn. 1995), and its own opinion in *Semiconductor Automation, Inc. v. Lloyds of London*, 543 N.W.2d 123 (Minn.App.1996), *rev. denied* (Minn. Mar. 19, 1996). On appeal to this court, Soo Line primarily argues that the court of appeals incorrectly concluded that federal preemption always results in lack of subject matter jurisdiction. Soo Line also asserts that the court of appeals erred by holding (1) that an interlocutory summary judgment based on lack of subject matter jurisdiction is appealable absent an express Rule 54.02 determination, and (2) that such an appeal is mandatory.

We begin our analysis by focusing on Soo Line's argument concerning Rule 54.02 and the two procedural issues raised by this argument. The first procedural issue raised by Soo Line is whether a summary judgment motion that is granted based on a lack of subject matter jurisdiction is immediately appealable absent an express Rule 54.02 determination. The

**2.** This rule was amended in 1999. It now provides that "an appeal may be taken from a judgment within 60 days after its entry, and from an appealable order within 60 days after service by any party of written notice of its filing." Minn. R. Civ.App. P. 104.01 (1999).

second issue is whether appeal from an immediately appealable interlocutory judgment is permissive rather than mandatory. With respect to this second issue, mandatory means that if the appeal is not taken from an interlocutory ruling, the right to appeal the ruling is lost, while permissive means that a party who is authorized to take an interlocutory appeal has the option to appeal the ruling immediately or to wait to appeal from the final judgment. These two issues raise legal questions that require construction of a procedural rule, which is subject to de novo review. *See State v. Nerz*, 587 N.W.2d 23, 24–25 (Minn. 1998).

There are two main sources of authority critical to our analysis. First, we look to Minn. R. Civ. P. 54.02, which governs judgments involving multiple parties or multiple claims. Second, we look to caselaw that has shaped our policy toward interlocutory appeals. More particularly, in *McGowan* we discussed the reasons why some interlocutory orders or judgments are immediately appealable and cited to cases discussing the collateral order doctrine. *See McGowan*, 527 N.W.2d at 830, 832 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 524–25, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Anderson v. City of Hopkins*, 393 N.W.2d 363, 363–364 (Minn.1986)). Then in *Shorewood v. Metropolitan Waste Control Comm'n*, we addressed the practical dilemmas appellants often face in deciding when and from what to appeal. 533 N.W.2d 402 (Minn.1995).

Minnesota Rules of Civil Procedure 54.02 governs judgments in actions that involve multiple parties or multiple claims. The rule provides that a district court

> may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties *only upon an ex-*

*press determination that there is no just reason for delay and upon an express direction for the entry of judgment.* In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Minn. R. Civ. P. 54.02 (emphasis added).

We have stated that the purpose of Rule 54.02 is "to prevent piecemeal, interlocutory appeals and possible prejudice from the adjudication of less than all claims involved." *Novus Equities Corp. v. EM–TY Partnership*, 381 N.W.2d 426, 428 (Minn.1986). Nevertheless, the district court has discretion under the rule to allow these types of appeals by making "an express determination that there is no just reason for delay" and "an express direction for the entry of judgment." Minn. R. Civ. P. 54.02; *see also Novus*, 381 N.W.2d at 428.

In *McGowan*, we considered whether an order denying summary judgment is immediately appealable when a party sought dismissal based on lack of subject matter jurisdiction. *See McGowan*, 527 N.W.2d at 830. We first noted that the denial of such a motion is generally not appealable absent the district court's certification of the question as "important and doubtful" pursuant to Minn. R. Civ.App. P. 103.03(h). *See McGowan*, 527 N.W.2d at 832. Rule 103.03 provides a general rule for which orders and judgments are appealable.[3] However, we then articulated an exception

---

**3.** Rule 103.03 was amended in 1999. One of the changes made to the rule is that the rule now provides that an appeal may be taken "from such other orders or decisions as may be appealable by statute or under the decisions of the Minnesota appellate courts." Minn. R. Civ.App. P. 103.03(i).

to this general rule. *See id.* at 832–33. In doing so, we acknowledged that immediate appeals are allowed when a district court denies a summary judgment motion for either lack of personal jurisdiction or government immunity, even absent Rule 103.03(h) certification. *See McGowan,* 527 N.W.2d at 832–33 (citing *Anderson,* 393 N.W.2d at 364; *Hunt v. Nevada State Bank,* 285 Minn. 77, 88–89, 172 N.W.2d 292, 300 (1969)).

The rationale for these exceptions is that determinations of lack of personal jurisdiction and governmental immunity are determinations of rights whereby "a defendant is compelled thereby to take up the burden of litigation in this state that might otherwise be avoided." *Id.* at 833 (quoting *Hunt,* 285 Minn. at 89, 172 N.W.2d at 300). Consistent with this reasoning, we held in *McGowan* that a denial of a summary judgment motion based on lack of subject matter jurisdiction is also immediately appealable because "[i]f the district court * * * lacks jurisdiction over the subject matter, no purpose is served by putting the parties or the court through the rigors of trial before that determination is made." *Id.* Our conclusion in *McGowan* reflected a concern that forcing an appellant to wait to appeal would deny the appellant the benefit of the legal rule by which it sought dismissal.

Our decision in *McGowan* is consistent with the collateral order doctrine which we cited favorably in *Anderson,* 393 N.W.2d at 364. In *Anderson,* we held that the collateral order doctrine is useful to consider when presented with a general question of whether an interlocutory order or judgment is appealable. *See id.* at 363, 364 (citing *Mitchell,* 472 U.S. at 524–25, 105 S.Ct. 2806; *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)). What we refer to as the collateral order doctrine was first articulated by the United States Supreme Court in *Cohen. See Cohen,* 337 U.S. at 546, 69 S.Ct. 1221. Under this doctrine, parties may appeal from interlocutory orders or judgments under circumstances where the decision is (1) a final determination of a claim of right, (2) "too important to be denied review[,]" and (3) "too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id.*

Several appellate courts have explicitly held that when appeals are available under the collateral order doctrine, they are permissive rather than mandatory. *See, e.g., Sierra Club v. Robertson,* 28 F.3d 753, 756 n. 3 (8th Cir.1994); *Jamison v. Wiley,* 14 F.3d 222, 231 n. 11 (4th Cir.1994); *United States v. Michelle's Lounge,* 39 F.3d 684, 692 (7th Cir.1994). The rationale for this rule is as follows:

> Any rule that requires forfeiture of appellate opportunities for guessing wrong about doctrines of appealability that often are obscure would greatly increase the costs of collateral order doctrine by forcing protective appeals in many situations in which appealability is uncertain and in which all parties might prefer to await review on appeal from the final judgment. Forfeiture, moreover, would trap some parties in a box framed by a rule designed to alleviate untoward risks, not to create them.

15A Charles A. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3911 at 359 (2d ed.1992).

In *Shorewood,* we addressed whether orders, as opposed to final judgments, are appealable when a district court's order granting the defendants' motion to dismiss the case for lack of subject matter jurisdiction also specifically directed "let judgment be entered accordingly." *See Shorewood,* 533 N.W.2d at 403. The City of Shorewood appealed within 90 days of entry of judgment of dismissal, but more than 30 days after notice of filing of the order.

*See id.* The court of appeals held the appeal untimely, reasoning that the order was immediately appealable; therefore, appeal could be taken only from the order, not·the judgment. *See id.* On appeal, we cited our decision in *Bulau v. Bulau,* 208 Minn. 529, 531, 294 N.W. 845, 847 (1940), which held that while a judgment of dismissal would normally be required for an appeal, when the dismissal is for lack of jurisdiction, appeal from the order may be allowed. *See Shorewood,* 533 N.W.2d at 403–04. We interpreted *Bulau* as "reliev[ing] the parties and their lawyers of the necessity to decide correctly the propriety of the district court's direction for the entry of judgment or its failure or declination to so direct." *Id.* at 404. We then went on to conclude that under the facts in *Shorewood,* the appealing party would be justified in appealing from either the order or the judgment. *See id.* This conclusion evinces a policy of some procedural flexibility for the benefit of the appellant.

As previously noted, the court of appeals cited its holding in *Semiconductor Automation, Inc. v. Lloyds of London,* 543 N.W.2d 123 (Minn.App.1996), *rev. denied* (Minn. Mar. 19, 1996), to reach its decision in the case presently before us. In turn, it relied on our decision in *Shorewood* to reach its holding in *Semiconductor.* In *Semiconductor,* plaintiff Semiconductor Automation, Inc., an insured, alleged breach of an insurance contract and brought suit against Lloyds of London and the corporation that had issued the insurance policy. *See Semiconductor,* 543 N.W.2d at 124. Lloyds moved to dismiss on the grounds of insufficient service of process and the district court granted the motion, but the court's order did not expressly determine that there was "no just reason for delay." Semiconductor did not appeal within 30 days of notice of filing the order of dismissal or within 90 days of entry of the interlocutory judgment dis-

missing Lloyds. *See id.* Final judgment was subsequently entered dismissing the remaining defendant, after which Semiconductor appealed Lloyds' dismissal from the suit. *See id.*

The court of appeals held Semiconductor's appeal untimely on the grounds that Semiconductor did not appeal within 90 days of the interlocutory judgment dismissing Lloyds. *See id.* In reaching this decision, the court cited our holding in *Shorewood* as permitting appeal from either an order or a judgment dismissing for lack of subject matter jurisdiction. *See id.* Applying this holding to the facts in *Semiconductor,* the court first concluded that "dismissal for lack of jurisdiction is immediately appealable independent of the rules, and the inclusion of rule 54.02 language is not a prerequisite to appellate review." *Id.* Based on this reasoning, the court held the appeal untimely because Semiconductor appealed from the final judgment and not within 90 days after entry of the interlocutory judgment dismissing Lloyds. *See id.* Implicit in this result is the conclusion that appeal from the interlocutory judgment was mandatory. *See id.*

■ It is within this context that we turn to the issue of whether the interlocutory judgment dismissing GM on the grounds of lack of subject matter jurisdiction is immediately appealable absent an express Rule 54.02 determination. We first conclude that the court of appeals' reliance on *McGowan* to support its decision is inappropriate. While we held in *McGowan* that denial of a summary judgment motion based on lack of subject matter jurisdiction was immediately appealable, the issue in *McGowan* is distinguishable from the one presented here. *McGowan* specifically addressed the policy concerns of a party who is burdened by potentially unnecessary litigation when a motion to dismiss based on a lack of

subject matter jurisdiction is denied. More particularly, in *McGowan* we carved out an exception to Minn. R. Civ.App. P. 103.03 when an interlocutory order or judgment is a final determination of right that compels an appellant to take up a burden of litigation that might otherwise be avoided. When we carved out this exception, we did not hold that every interlocutory order or judgment that falls within this general definition is subject to immediate appeal. Rather, we expressed concern with forcing an appellant to wait to appeal from a final judgment when waiting would deny that party the benefit of the legal rule by which the party sought dismissal.

The concerns we had in *McGowan* do not exist when, as in this case, a summary judgment motion is *granted* based on lack of subject matter jurisdiction. Here, GM was relieved of the burden of proceeding with litigation; thus, the same need for an immediate appeal is not present. Accordingly, we conclude that because the policy concerns we had in *McGowan* are not present in the instant case, the same result is not mandated here.

Rule 54.02 seeks to limit piecemeal litigation by only allowing interlocutory appeals when the district court exercises its discretion to render the interlocutory judgment final by making the express Rule 54.02 determination. We hesitate to disturb the district court's discretion by creating an exception to Rule 54.02 absent a determination of right akin to the right in *McGowan*. To grant such an exception would unnecessarily undermine the policy against piecemeal litigation. To do so would also run the risk of trapping appellants by forcing them to guess when and from what to appeal. This could result in appellants taking protective interlocutory appeals when they are unsure if an interlocutory order or judgment is immediately appealable. The better position is that an interlocutory order granting summary judgment based on lack of subject matter jurisdiction is not immediately appealable absent an express Rule 54.02 determination. Thus, we conclude that the judgment entered on August 13, 1998 granting GM's summary judgment motion was not immediately appealable absent an express Rule 54.02 determination. Therefore, we hold Soo Line's January 8, 1999 appeal of the October 12, 1998 final judgment timely.

■ Even though we have concluded that Soo Line's appeal was timely because the interlocutory judgment dismissing GM was not immediately appealable, we must nevertheless address the second procedural question raised by Soo Line. The holdings of the court of appeals in both *Semiconductor* and in this case result in a conclusion that it is mandatory to appeal from an interlocutory order or judgment that is immediately appealable, even when the express Rule 54.02 determination is not a prerequisite. We conclude that such a result is inconsistent with the reasoning underlying our decisions in both *McGowan* and *Shorewood*.

When a district court makes a Rule 54.02 determination, the interlocutory judgment becomes a judgment that is immediately appealable. *See* Minn. R. Civ. P. 54.02; Minn. R. Civ.App. P. 103.03(a). However, in specific circumstances such as those presented in *McGowan*, interlocutory orders or judgments may be immediately appealable despite a district court's declination to so direct. Our decision in *McGowan* protects the appealing party by holding that denial of a motion to dismiss based on lack of subject matter jurisdiction should be immediately appealable because to hold otherwise would unjustly require the party to bear the burden of litigation. *See McGowan*, 527 N.W.2d at 833. In those circumstances, the appeal is for the benefit of the appellant as relief from a potentially unfair burden. We allowed similar procedural flexibility for the bene-

fit of appellants in *Shorewood.* *See Shorewood,* 533 N.W.2d at 404. However, the court of appeals, both in *Semiconductor* and this case below, established that appeal from an immediately appealable interlocutory order or judgment that does not contain an express Rule 54.02 determination is mandatory rather than permissive.

A rigid determination that these types of appeals are mandatory would be inconsistent with the policy evinced in both *McGowan* and *Shorewood.* Such a rule would also be inconsistent with the collateral order doctrine of the federal system, under which similar appeals are permissive rather than mandatory. Finally, consistent with our policy against piecemeal litigation, construing these interlocutory appeals as permissive allows appellants to wait to appeal from the final judgment if they so choose. This avoids "trap[ping] some parties in a box framed by a rule designed to alleviate untoward risks, not to create them." Charles A. Wright, et al., *supra,* § 3911 at 359. The better rule is that failure to appeal from such an interlocutory order or judgment does not result in forfeiture of the right to appeal from the final judgment. Therefore, to the extent that the court of appeals' holdings in this case and in *Semiconductor* are inconsistent with this rationale, they are overruled.

Our conclusion that the interlocutory order granting GM's summary judgment motion for lack of subject matter jurisdiction was not immediately appealable and that even if it were, the appeal would be permissive rather than mandatory is dispositive of Soo Line's appeal to this court. Accordingly, we need not reach the other issue raised by Soo Line; that is, whether the court of appeals erred in holding that the district court judgment dismissing GM on the basis of federal preemption was the equivalent of dismissal for lack of subject matter jurisdiction. Having resolved this case on the basis of our own procedural rule, there is no need to address this issue,

which requires analysis of a federal statute. Because we do not reach the federal preemption issue, our opinion should not be interpreted as either affirming or reversing that part of the court of appeals order.

We reverse the holding of the court of appeals that Soo Line's appeal was untimely and remand to the court of appeals for full consideration of Soo Line's appeal on its merits.

Reversed and remanded for consideration on the merits.