David VEZINA, Relator,

v.

BEST WESTERN INN MAPLEWOOD and State Fund Mutual Insurance Company, Respondents,

and

Commissioner, Minnesota Department of Labor and Industry, Intervenor, Respondent.

Lloyd G. Shelton, Relator,

v.

National Painting and Sandblasting and Wausau Insurance Company, Respondents,

National Painting and Drywall and Grinnell Mutual/ASU Risk Management, Respondents,

and

Commissioner, MN Department of Labor and Industry, Intervenor, Respondent,

and

Special Compensation Fund.

Nos. C9–00–1457, C9–00–1488.

Supreme Court of Minnesota.

May 31, 2001.

325

Thomas D. Mottaz, Law Offices of Thomas D. Mottaz, Anoka, Dougals Peine, St. Paul, for Employee–Relator Vezina.

Andrew W. Lynn, Lynn Scharfenberg & Associates, Minneapolis, for Respondents Vezina.

Mike Hatch, Attorney General, State of Minnesota, Richard L. Varco, Jr., Assistant Attorney General, St. Paul, for Intervenor/Respondent Vezina and Shelton.

Pustorino, Tilton & Parrington, P.A., Peter J. Pustorino, Jeffrey James Lindquist, Minneapolis, Amicus for Minnesota Defense Lawyers Association.

Thomas R. Longfellow, Sieben, Polk, LaVerdiere, Jones & Hawn, P.A., Douglas Peine, St. Paul, for Employee–Relator Shelton.

Mark E. Tracy, Conley and Borgeson, Thomas L. Cummings, Jardine, Logan & O'Brien, P.L.L.P., St. Paul, for Respondents Shelton.

## OPINION

STRINGER, Justice.

The primary issue presented by these two appeals consolidated for review on certiorari[1] is whether Minn.Stat. § 176.101, subd. 4, requires that compensation for a permanently and totally disabled employee as defined in Minn.Stat. § 176.101, subd. 5

(2000), must be subject to a full offset for benefits received from other government disability programs. The parties do not dispute that David D. Vezina and Lloyd Shelton (employee-relators) sustained compensable injuries and meet the statutory threshold for permanent total disability (PTD) as defined in Minn.Stat. § 176.101, subd. 5, *see McClish v. Pan–O–Gold Baking Co.*, 336 N.W.2d 538, 541–42 (Minn. 1983), and that the PTD benefits are subject to an offset under section 176.101, subdivision 4, once $25,000 in PTD benefits have been paid. The dispute centers around the extent of the offset. The workers' compensation judge in each case ruled that under section 176.101, subdivision 4, the offset may not reduce the compensation rate below 65 percent of the statewide average weekly wage. The Workers' Compensation Court of Appeals (WCCA) reversed based on the determination that Minn.Stat. § 176.101, subd. 4, clearly and unambiguously provides that PTD benefits must be offset by benefits received from "any government disability benefit program" even if application of the offset results in a reduction of benefits below the minimum compensation rate of 65 percent of the statewide average weekly wage. We agree and affirm.

The controlling statute is Minn.Stat. § 176.101, subd. 4, which provides:

For permanent total disability, as defined in subdivision 5, the compensation shall be 66–2/3 percent of the daily wage at the time of the injury, subject to a maximum compensation equal to the maximum weekly compensation for a temporary total disability and a minimum weekly compensation equal to 65 percent of the statewide average weekly wage. This compensation shall be paid

---

1. *Vezina v. Best Western Inn*, 2000 WL 1177704 (W.C.C.A., July 28, 2000) and *State Fund Mut. Ins. v. Nat'l Painting and Sand-* *blasting*, 2000 WL 1177706 (W.C.C.A., July 28, 2000).

during the permanent total disability of the injured employee but after a total of $25,000 of weekly compensation has been paid, the amount of the weekly compensation benefits being paid by the employer shall be reduced by the amount of any disability benefits being paid by any government disability benefit program if the disability benefits are occasioned by the same injury or injuries which give rise to payments under this subdivision.

For purposes of our analysis, it is important to note that in 1995 the legislature amended the first sentence of Minn.Stat. § 176.101, subd. 4, to delete language indicating that the minimum weekly compensation for PTD is equal to "the minimum weekly compensation for a temporary total disability" and substituted language indicating that the minimum weekly compensation for PTD is equal to "65 percent of the statewide average weekly wage." Act of May 25, 1995, ch. 231, art. 1, § 20, 1995 Minn. Laws 1977, 1990.

In 1995 the legislature also repealed the supplementary benefits program that provided benefits if the permanent total disability benefit provided by Minn.Stat. § 176.101, subd. 4, dipped below the supplementary benefit rate of 65 percent of the statewide average weekly wage. Act of May 25, 1995, ch. 231, art. 1, § 35, 1995 Minn. Laws 1977, 1998 (repealing Minn. Stat. § 176.132 (1994)). The supplementary benefit was based upon the "gap" between the permanent total disability benefit and 65 percent of the statewide average weekly wage. Minn.Stat. § 176.132 (1994). Unlike workers' compensation benefits which are paid by the employer and are not reimbursable, in the case of supplementary benefits employers were reimbursed through a special compensation fund established by the state. *Id.*

Employee-relator David Vezina suffered a compensable injury on October 27, 1995, in the nature of a fracture at the T–6 level of his back while employed by Best Western Inn Maplewood. On the date of injury, the employer was insured for workers' compensation liability by State Fund Mutual Insurance Company. The parties in that case also stipulated that Vezina has serious heart and lung conditions and he is permanently and totally disabled. The compensation judge found that the back injury was a substantial contributing cause of the permanent total disability. The parties do not contest that Vezina has been paid $25,000 in PTD benefits, triggering the offset required under Minn.Stat. § 176.101, subd. 4.

In addressing the issue now before the court, the compensation judge in *Vezina* cited *Owens v. Water Gremlin Co.*, 60 Minn. Workers' Comp. Dec. 16, 34–35 (W.C.C.A., Aug. 6, 1999), which stated that it is "difficult to discern" the legislative intent behind the 1995 amendments to the Workers' Compensation Act.[2] On this basis and what she referred to as the plain

---

2. The WCCA stated in *Owens*:

Although a reasonable argument can be made that the 1995 statutory changes were intended to reduce rather than to expand benefits owed to injured employees, such an argument does not supplant the clear language of the statute. While the legislature did place a cap on entitlement to temporary total disability benefits and required permanent partial disability thresholds for entitlement to permanent total disability, it also raised the maximum compensation rate to $615.00 per week and increased the minimum compensation rate for permanent total disability to 65% of the statewide average weekly wage. Given such evidence of compromising considerations at work in the total picture of the 1995 amendments, the ultimate "legislative intent" behind any single provision among those amendments remains difficult to discern.

*Owens*, 60 Minn. Workers' Comp. Dec. at 33–34.

language of the statute, the compensation judge in *Vezina* determined that because the 1995 amendment eliminated the supplemental benefits applicable to individuals under Minn.Stat. § 176.132, subd. 2(d) (1994), the legislature must have intended the minimum PTD benefit of 65 percent of the statewide average weekly wage to be fixed, and that the minimum should not be reduced by the social security offset—otherwise the employee would not get the higher rate that the compensation judge perceived the legislature intended.

In *Shelton*, the workers' compensation judge determined that the employee suffered a compensable injury to his cervical spine on February 4, 1983, while employed by National Painting and Sandblasting. On the date of injury, the employer was insured for workers' compensation liability by Wausau Insurance Company. As a result of the injury, Shelton had cervical spine surgery on December 7, 1984. The judge found that Shelton returned to work after surgery with minimal functional limitations although he continued to experience pain in the first year after returning to work.

Beginning in April 1994, Shelton sought treatment for painful shoulder symptoms. The judge found that Shelton sustained a *Gillette*-type injury [3] to his shoulders, elbows and forearms. At the time of this injury, the employer, National Painting and Drywall, was insured by Grinnell Mutual. The employer and its insurer accepted liability and furnished various benefits, including rehabilitative services and temporary total disability (TTD) benefits. Based on the opinions of several medical and vocational experts, including the employer's vocational expert, that Shelton was permanently and totally disabled, the

workers' compensation judge ordered that the employee be paid permanent total disability benefits from January 6, 1998, the date the insurer terminated rehabilitative services. The compensation judge determined that "pursuant to Minn.Stat. § 176.101, Subd. 4 (1995), the Social Security offset shall not reduce the employee's permanent total disability benefits below 65% of the statewide average weekly wage."

On review the WCCA reversed the compensation judge's orders regarding application of the offset in both *Shelton* and *Vezina*. The WCCA framed the issue as whether the statutory minimum in Minn. Stat. § 176.101, subd. 4, is the minimum only at the time of determination of the employee's initial compensation rate, and only prior to the $25,000 threshold, or whether the statutory minimum remains the minimum even after the $25,000 threshold that triggers the offset is met. The WCCA noted that the minimum compensation rate has always been a part of section 176.101, subdivision 4, and that prior to the 1995 amendment it was not uncommon for workers' compensation benefits to be reduced below the minimum, even to the point of a complete offset. The WCCA further observed that the 1995 amendment did not alter the offset provision and cited our decision in *Potucek v. City of Warren* where we affirmed the dollar-for-dollar reduction of compensation benefits to offset other government benefits. 535 N.W.2d 333, 336 (Minn.1995) ("[S]ection 176.101, subd. 4 contemplates a simple dollar-for-dollar reduction in the 'amount of the weekly compensation benefits being paid by the employer' by the 'amount of any disability benefits being

3. *See Gillette v. Harold, Inc.,* 257 Minn. 313, 321–22, 101 N.W.2d 200, 206 (1960) (holding employee suffered compensable injury where disability of foot was aggravated by constant and continued use in performing the ordinary and necessary duties of employment).

paid by any government disability benefit program * * *.' ").

The WCCA concluded that the plain language of the statute clearly and unambiguously provides that the employee's weekly compensation being paid by the employer was to be offset by disability benefits being paid by other government disability benefit programs, and that the amendment of Minn.Stat. § 176.101, subd. 4, in conjunction with the repeal of the supplementary benefits provision in 1995 was not intended to establish 65 percent of the statewide average weekly wage as an absolutely fixed minimum benefit.

## I.

■■■ Statutory interpretation by the WCCA is subject to de novo review by this court. *Owens v. Water Gremlin Co.,* 605 N.W.2d 733, 735 (Minn.2000) ("When reviewing questions of law determined by the WCCA, we are free to exercise our independent judgment.").

The parties agree that the first sentence of Minn.Stat. § 176.101, subd. 4, unambiguously provides PTD benefits equal to two-thirds of the wage the employee was earning at the time of the injury, subject to a maximum and minimum weekly compensation level of no more than the maximum weekly compensation for TTD and no less than 65 percent of the statewide average weekly wage. The parties also agree that the 1995 amendment changed the minimum weekly compensation from the minimum required for TTD to 65 percent of the statewide average weekly wage. The parties disagree on the interpretation of the language that requires application of the offset after $25,000 in PTD benefits have been paid.

Respondents argue that under the offset, the benefits paid under Minn.Stat. § 176.101, subd. 4, are reduced by one dollar for each dollar of government dis-

ability program benefits, even if application of the offset results in the worker being paid workers' compensation benefits in an amount less than 65 percent of the statewide average weekly wage. Employee-relators argue that the offset may not be used to reduce PTD benefits to less than 65 percent of the statewide average weekly wage, no matter how much the employee receives in government disability benefit program benefits.

Employee-relators argue that the use of the word "minimum" in the first sentence of Minn.Stat. § 176.101, subd. 4, clearly indicates that PTD benefits cannot be lower than the 65 percent of the statewide average weekly wage because the plain meaning of the word "minimum" is the least or lowest. Thus, employee-relators assert, applying the offset to reduce PTD benefits below 65 percent of the statewide average weekly wage violates the clear meaning of the statute.

Employee-relators further argue that the WCCA's reference to the generally accepted practice of a dollar-for-dollar application of the offset under Minn.Stat. § 176.101, subd. 4, violates the general rule that extrinsic aids are not consulted unless the court finds that the statute is ambiguous. *Arlandson v. Humphrey,* 224 Minn. 49, 54, 27 N.W.2d 819, 823 (1947) ("Where there is no uncertainty or ambiguity in the language, the statute speaks for itself."). Further, employee-relators note that before the 1995 amendments, the state-funded supplemental benefits program ensured that notwithstanding the offset, PTD employees would receive at least 65 percent of the statewide average weekly wage in workers' compensation benefits, and thus there was no incentive for employees to litigate the issue of the proper application of the offset before the 1995 amendments.

Employee-relators also argue that if legislative intent is considered, proponents of the amendment during the 1995 legislative debates stated that "Nobody is going to take a cut under this." House debate on H.F. 642, 79th Minn. Leg., May 9, 1995 (audio tape) (statement of Rep. Girard). Further, the simultaneous repeal of the supplementary benefit provision and the amendment to section 176.101, subdivision 4, raising the minimum benefit to 65 percent of the statewide average weekly wage demonstrates legislative intent not to reduce PTD benefits.

Respondents and intervenor, the Minnesota Department of Labor and Industry, explain that the plain language of the statute establishes a three-part process to determine PTD benefits. The first step is a computation of compensation under the first sentence of subdivision 4 without regard to benefits being paid by other government disability programs. The second step is to take into account that PTD benefits are subject to an offset once $25,000 in PTD benefits have been paid. The third step is the calculation of the offset. Minn.Stat. § 176.101, subd. 4 ("[A]fter a total of $25,000 of weekly compensation has been paid, the amount of the weekly compensation benefits being paid by the employer shall be reduced * * *.").

Citing the rule that "Every law shall be construed, if possible, to give effect to all its provisions," Minn.Stat. § 645.16 (2000), the Commissioner of the Department of Labor and Industry (commissioner) argues that employee-relators' proposed interpretation would ignore the second sentence of subdivision 4 because the word "but" in the second sentence of section 176.101, subdivision 4, can be read only to mean "with the exception that" or "except

that"—plainly and unambiguously indicating that the second sentence is an exception to the first sentence of that section. Therefore "minimum" has its plain meaning in the first step, but is subject to the exception provided by the plain language of the offset provision in the second sentence. The commissioner argues that when read as a whole, the statute contemplates that application of the offset may result in compensation benefits below the "minimum."

The commissioner notes that the offset methodology was not affected by the 1995 amendments. The legislature repealed the supplementary benefits program and amended Minn.Stat. § 176.101, subd. 4, to increase the minimum weekly compensation level. That is all it did—it did not change the second sentence of section 176.101, subdivision 4, regarding the offset for benefits paid by other government disability benefit programs. As further evidence of legislative intent, the commissioner cites Representative Sviggum's comment during the legislative debate that "today we are taking the opportunity to finally put * * * into law" the recommendations made in the legislative auditor's report of 1988 that criticized the supplementary benefit system for failing to coordinate benefits with other government disability benefit programs, in some cases creating a disincentive for injured employees to return to work because total payments to injured employees exceeded their pre-injury wage. House debate on H.F. 642, 79th Minn. Leg., May 22, 1995 (audio tape) (statement of Rep. Sviggum). Respondents argue that adoption of employee-relators' proposed interpretation of Minn.Stat. § 176.101, subd. 4, would revive the duplication in benefits criticized in the 1988 report.[4]

4. The commissioner criticizes employee-relators' selective omission of key statements

when referring to the legislative debates. Employee-relators assert that during the 1995

██ We conclude that the statute is clear in the application of the three-step formula. The minimum and maximum limits are established in the period in which benefits are first paid to the injured employee, but once $25,000 in benefits have been paid, the offset is to be applied. There is no language indicating that the offset may be taken only against the benefits in excess of 65 percent of the statewide average weekly wage—the statute simply and straightforwardly provides that compensation benefits are offset dollar-for-dollar by other benefits paid under other government programs. Respondents' proposed interpretation of the statute gives full effect to both sentences of section 176.101, subdivision 4, and is most consistent with the plain language of the statute.

The coordination of workers' compensation benefits with other government disability program benefits is furthered by this straightforward application of the offset provision as a dollar-for-dollar reduction. As we noted in *Potucek*, "workers' compensation is but one element of a system of wage-loss protection [and] the Minnesota legislature early on provided a means for coordinating workers' compensation with the federal social security system and the state pension system." *Potucek*, 535 N.W.2d at 336. The changes to the workers' compensation system in 1995

reflect the importance of coordination of benefits, as the language of the offset provision in Minn.Stat. § 176.101, subd. 4, was not modified by the 1995 legislature. It is important to note that 65 percent of the statewide average weekly wage is indeed a minimum—but it is an aggregate of benefits paid under the compensation laws and other government disability benefit programs such as social security. So while PTD benefits may be offset below the base compensation level of 65 percent of the statewide average weekly wage after $25,000 in PTD benefits have been paid, the benefits received by a PTD employee will not fall below that level.

Thus, the language of the statute and indications of legislative intent demonstrate that the offset is to be applied dollar-for-dollar even though the offset may reduce the workers' compensation benefits paid under section 176.101, subdivision 4, below 65 percent of the statewide average weekly wage, and we so hold.

## II.

██ The second issue on appeal concerns a contribution and reimbursement claim raised by *Shelton* respondents National Painting and Drywall and Grinnell Mutual Reinsurance Company (Grinnell). Grinnell sought contribution and reim-

---

debate of the amendment to Minn.Stat. § 176.101, subd. 4, on the floor of the House, Representatives Girard and Betterman stated that the amendment would not cut benefits to workers. House debate on H.F. 642, 79th Minn. Leg., May 9, 1995 (audio tape) (statements of Reps. Girard and Betterman). The commissioner argues that employee-relators misrepresented the discussion as' relating to the application of the offset on future injured employees when in fact the statements were made in the context of a discussion about the retroactive effects of the repeal of supplementary benefits.

Employee-relators argue that their position is further supported by the exchange in which

Representative Leighton asked the bill's author Representative Kelso whether the minimum rate would be paid before or after application of the offset and Representative Kelso answered, "before." House debate on H.F. 642, 79th Minn. Leg., May 9, 1995 (audio tape) (statements of Reps. Leighton and Kelso). Respondents counter that Representative Leighton immediately responded, "I think its [sic] important for the members of this body to understand that [65 percent of the statewide average weekly wage] would not be a floor and that there is going to be an offset after that amount." *Id.*

bursement from respondents National Painting and Sandblasting and Wausau Insurance Company (Wausau), asserting that Shelton's permanent and total disability was partially caused by the 1983 cervical spine injury suffered when Wausau carried the risk. Conflicting medical testimony was presented regarding the effect of the 1983 cervical spine injury and the later *Gillette* injury suffered when Grinnell carried the risk. The compensation judge denied the contribution and reimbursement claim, concluding that Shelton was not significantly restricted in his work activities after 1985. On appeal, the WCCA observed that the employee returned to full-time work at a physically demanding job after recovering from the 1983 injury and performed his job duties for approximately 10 years without loss of time from work or further medical treatment in connection with the 1983 injury. The WCCA determined that the findings of the compensation judge were supported by substantial evidence and affirmed the denial of the contribution and reimbursement claim. We will not disturb the factual findings of the compensation judge regarding equitable apportionment unless they are manifestly contrary to the evidence. *DeNardo v. Divine Redeemer Mem'l Hosp.*, 450 N.W.2d 290, 293 (Minn.1990).

After a careful review of the record we conclude that the compensation judge's denial of equitable apportionment, as affirmed, was based on reasonable factual findings consistent with the evidence presented. We therefore affirm.

Affirmed.