McKeig, Justice.
The question presented in this case is whether an employee's claim for temporary total disability (TTD) benefits under the Minnesota Workers' Compensation Act can be offset by benefits paid to the employee for the same period of disability under the employer's self-funded, self-administered, short-term disability (STD) plan. The workers' compensation judge awarded TTD benefits to respondent-employee Claude Bruton (Bruton), but determined that relator-employer Smithfield Foods (Smithfield) was entitled to offset those benefits by the amount of STD benefits already paid. Then, because Smithfield had already paid STD benefits in essentially the same amount that would be owed as TTD benefits, the compensation judge dismissed Bruton's petition. The workers' compensation court of appeals reversed. Because there is no statutory authority for an offset of workers' compensation benefits by the amount of benefits paid under an employer's self-funded, self-administered STD plan, we affirm.
FACTS
The facts of this case are undisputed. On August 25, 2016, Bruton fell, dislocated his shoulder, and sustained facial lacerations while working for Smithfield. At the time of this injury, Smithfield maintained workers' compensation insurance through Safety National Casualty Corporation, with the claims administered by ESIS, Inc. Smithfield's policy has a $2 million deductible per claim. Smithfield also maintained an STD policy for its employees. The STD plan was administered by Smithfield's human resources department and was in the name of John Morrell Food Group, which is an entity related to Smithfield. The parties stipulated that Smithfield owns the funds held in this plan and administers the plan on behalf of its (and John Morrell's) employees. The parties also agreed that Smithfield's plan did not qualify as an ERISA plan. See, e.g. , 29 U.S.C. § 1002 (2012) (defining plans governed by the Employee Retirement Income Security Act).
Smithfield initially denied that Bruton suffered a work-related injury covered by workers' compensation benefits. But, Smithfield did not dispute that Bruton was disabled as a result of his injuries. Thus, Smithfield paid Bruton STD wage-loss benefits under its private plan, representing 80 percent of his weekly compensation from September 5, 2016 to March 26, 2017, totaling $12,419.90. During the same period, Smithfield also paid Bruton $2,030.48 *663 for previously-accrued paid sick and vacation leave.[1]
Bruton filed a petition for workers' compensation benefits on October 24, 2016. After Smithfield conducted an investigation, it filed an amended notice of primary liability that acknowledged Bruton's injuries were compensable and work-related under the Workers' Compensation Act. ESIS, Smithfield's workers' compensation insurer, began paying benefits, including TTD benefits, starting on March 27, 2017. ESIS also paid Bruton benefits retroactively, for the period during which workers' compensation liability was denied. For these retroactive payments, ESIS paid Bruton $636.52, which represented the difference between the STD benefits Smithfield had already paid (reduced for state and federal taxes), and the TTD benefits that Bruton would have received had Smithfield acknowledged workers' compensation liability at the outset.
At the hearing before the compensation judge, Smithfield maintained that, because it had already paid Bruton wage-loss benefits under its STD plan, it did not owe Bruton additional TTD wage-loss benefits. Smithfield asserted that an offset was necessary to avoid imposing a double liability on it and to avoid a double recovery by Bruton. Relying on public policy that disfavors a double recovery, the workers' compensation judge concluded that an offset in Bruton's TTD benefits was required based on the amount Smithfield had paid as STD benefits.
Bruton appealed to the WCCA, which reversed. Bruton v. Smithfield Foods, Inc. , No. WC17-6113, 2018 WL 2710167 (Minn. WCCA May 21, 2018). The WCCA first concluded that the payments made under Smithfield's STD plan were not workers' compensation benefits because those payments were not made by an entity that is statutorily required to pay workers' compensation benefits: an insurer, a self-insured employer, a government entity, or the Special Compensation Fund. Id . at *3-4. Next, the WCCA decided that Smithfield could not invoke either of two statutory routes to reduce benefit payments to an injured worker. Id. First, because the STD payments were not wage-continuation payments, Smithfield could not invoke Minn. Stat. § 176.221, subd. 9 (2018) (relieving an employer who makes payment of "full wages" of certain obligations). 2018 WL 2710167 at *3. Second, an intervention claim was unnecessary because the WCCA could not "infer" that Smithfield and John Morrell are the same entity, despite the parties' stipulation otherwise. Id. at *4. See Minn. Stat. § 176.361, subd. 1 (2018) (allowing "[a] person" with "an interest" to intervene in a workers' compensation proceeding). Finally, the WCCA concluded that, even if it accepted that Smithfield and John Morell are the same entity, Smithfield had no contractual right to reimbursement of STD payments in the circumstances of this case. Id . at *5. Smithfield petitioned by writ of certiorari for review of the WCCA's decision.
ANALYSIS
We must decide whether the WCCA erred in determining that Smithfield is not entitled to offset its workers' compensation liability to Bruton by the amount of STD benefits it paid to Bruton.[2]
*664 The facts are undisputed. Thus, we must analyze the statutes that govern the employer's liability for wage-loss benefits within, and outside of, the workers' compensation system.[3] When interpreting statutes, we apply a de novo standard of review. Ekdahl v. Indep. Sch. Dist. # 213 , 851 N.W.2d 874, 876 (Minn. 2014). "We are not bound by WCCA decisions that rest upon the application of a statute to undisputed facts." Id.
Workers' compensation benefits are a statutory remedy that entitles employees to compensation for work-related injuries. See Ransom v. Ford Motor Co. , 472 N.W.2d 134, 136 (Minn. 1991). This statutory remedy includes provisions that address coordination of workers' compensation benefits with additional benefits that may be available from an obligor other than the employer. See Potucek v. City of Warren , 535 N.W.2d 333, 336 (Minn. 1995) (explaining that as "but one element of a system of wage-loss protection, the Minnesota legislature early on provided a means for coordinating workers' compensation" benefits with federal and state pension benefits). For example, certain insurers who pay medical costs and disability benefits to an injured employee may be reimbursed by the employer's workers' compensation insurer if the injury is later determined to be a compensable work-related injury. See Minn. Stat. § 176.191, subd. 3 (2018). Similarly, employers may be able to offset workers' compensation benefits by the amounts paid under some, though not all, disability or retirement plans. See Minn. Stat. § 176.101, subd. 4 (2018) ; see, e.g. , Ekdahl , 851 N.W.2d at 876-77 (explaining that Minn. Stat. § 176.101, subd. 4 (2012) allows for an offset of federal social security benefits but holding that the plain language of this statute "does not encompass" benefits paid by a state retirement fund); Hartwig v. Traverse Care Ctr. , 852 N.W.2d 251, 253 (Minn. 2014) (concluding that the offset statute "does not apply to an employee's non-social security pension benefits").
Smithfield contends that by seeking payment of TTD benefits and STD benefits from the same source, Smithfield, Bruton seeks a double recovery of his wage-loss benefits. Put differently, Smithfield argues that it has already paid Bruton the TTD benefits he is entitled to through its self-administered STD benefits plan. Smithfield argues that "[w]hether the *665 checks said 'Smithfield Foods' [from the STD plan] or 'ESIS' [for TTD benefits] on them should be of no significance whatsoever, in deciding whether [Bruton's claim] exceeds his compensation rate." Relying on the legislative intent to pay benefits to employees "at a reasonable cost to the employers," Minn. Stat. § 176.001 (2018), Smithfield contends that a recovery that compensates an employee for a work-related injury at a rate that is almost double the employee's weekly wage contravenes legislative intent.
Wage-coordination provisions in the workers' compensation laws are generally intended to avoid duplication of wage-loss benefits. See Ruter v. Minn. Dep't of Corrs. , 569 N.W.2d 407, 408 (Minn. 1997) ("Our compensation plan ... is based upon the notion that for a single wage loss, there should be only one wage-loss benefit."); Brooks v. A.M.F., Inc. , 278 N.W.2d 310, 315 (Minn. 1979) (stating in the context of a health-insurer's intervention claim that an employee "reimbursed twice for the same expense ... is unjustly enriched"). Smithfield cites our decision in Pierce v. Robert D. Pierce, Ltd. , for the principle that "the injustice of double recovery" is to be avoided in awarding workers' compensation benefits. 363 N.W.2d 761, 763 (Minn. 1985).
Pierce is distinguishable and not applicable here. In Pierce , the employee recovered TTD benefits from a settlement with an Alaska employer and later sought the same benefits for an injury "arising out of the same disabling condition" from a different employer in Minnesota. Id . at 761. Here, Bruton is not seeking TTD benefits from two different employers. Instead, Bruton seeks the TTD benefits to which he is entitled by statute, in addition to the STD benefits conferred, separately, by his employer. Thus, the question is whether Smithfield has a statutory right to reduce workers' compensation benefits otherwise payable by Smithfield simply because STD benefits have been paid through a self-funded, self-administered plan.[4]
The Legislature has enacted provisions that provide employers with certain offset remedies, but those statutes are not applicable here. For example, an offset is allowed for "permanent total disability" benefits when "disability benefits [are] paid by any government disability benefit" plan for the same injury, or "any old age and survivor insurance benefits." Minn. Stat. § 176.101, subd. 4. The Legislature has also enacted a specific offset provision to ensure coordination of a public employee's wage-loss benefits. See Minn. Stat. § 176.021, subd. 7 (2018). We have declined to expand these legislative offsets beyond their plain and unambiguous terms. See Ekdahl , 851 N.W.2d at 877 (declining to offset workers' compensation benefits by the amount of an employee's pension disability benefits because those benefits were not "a social security retirement benefit"); see also Potucek , 535 N.W.2d at 336 (noting that "in the absence of such express statutory election or offset provision ... [the loss systems] can be simultaneously drawn" (citation omitted)
*666 (internal quotation omitted)). Although there is strong public policy against double recovery of benefits, under these facts, there is nothing in Minn. Stat. § 176.101, subd. 1(a) that prevents Bruton from receiving both STD and TTD benefits. Smithfield does not contend otherwise, acknowledges that there is no express statutory authority for an offset under the facts of this case, and does not assert that a separate statute confers a right to reimbursement.[5]
Smithfield concedes that no statute includes similar provisions for TTD benefits paid through an employer's private STD plan. Smithfield argues that the absence of explicit statutory language allowing for an offset or reimbursement in this situation is a "small legislative hole" in the act. This may be true. But, this hole may also be a deliberate legislative choice. See, e.g., Meils ex rel. Meils v. Nw. Bell Tel. Co. , 355 N.W.2d 710, 713 (Minn. 1984) (explaining that "workers' compensation is solely a creature of statute" and "policy decisions regarding the scope of [the statutory remedy] are properly for the legislature"). Regardless, Smithfield's hole is for the Legislature to fill or not fill as it chooses. We will not insert words or meanings that were "intentionally or inadvertently omitted" by the Legislature. Rohmiller v. Hart , 811 N.W.2d 585, 590 (Minn. 2012). There is no statutory provision that authorizes reliance by Smithfield to offset the payments that it has already made to Bruton under the STD plan.
We recognize Smithfield's concern that the employer is effectively penalized for maintaining an additional wage-loss benefit for its employees suffering a covered workers' compensation injury, and through this STD program, immediately paying benefits to its employee when an injury occurs. But in the absence of a legislative offset provision, we affirm the WCCA. If a different result is necessary or intended, the Legislature-not the Judiciary-must act. See Meils , 355 N.W.2d at 713.
CONCLUSION
For the foregoing reasons, we affirm the decision of the Workers' Compensation Court of Appeals.
Affirmed.
Concurring, Thissen, Anderson, JJ.

The sums paid for sick and vacation leave are not at issue in this appeal.

Smithfield asserts that the WCCA abused its discretion when it sua sponte questioned whether Smithfield and John Morrell are the same entity for purposes of this case, notwithstanding the parties' stipulated agreement on this point. Bruton agrees that the WCCA erred in disregarding the parties' stipulation. " '[T]he Workers' Compensation Court of Appeals' review is limited to the issues raised by the parties in the notice of appeal.' " Gianotti v. Indep. Sch. Dist. 152 , 889 N.W.2d 796, 800 (Minn. 2017) (quoting Minn. Stat. § 176.421, subd. 6 (2016) ). Neither party raised an issue on appeal to the WCCA regarding the relationship between Smithfield and John Morrell, most obviously because the parties' stipulation addressed that relationship. We have held that the WCCA errs when it sua sponte raises and decides an issue that was not raised in the notice of appeal or the parties' briefs. Id. at 801. Because we can resolve this appeal on other grounds, this error is harmless.

We need not address the WCCA's alternative statutory theories: that only certain entities are permitted by statute to pay workers' compensation benefits, that payments under an employer's self-administered disability plan are not wage-continuation payments, and that an intervention claim may have been available to Smithfield, through John Morrell. Smithfield does not contend that it is an entity authorized to administer workers' compensation benefits, or that the STD benefits paid to Bruton are wage-continuation payments, and agrees, as the WCCA later recognized, that an employer need not assert an intervention claim in a workers' compensation proceeding. Smithfield contends only that it has paid Bruton the amount owed as workers' compensation benefits and Bruton is entitled to no more than the amount of benefits provided by statute. As we can resolve this appeal without resort to the statutory theories on which the WCCA relied, we do not consider those theories here.

We have previously noted that an insurer may have a claim for reimbursement when benefits are paid in the absence of a contractual obligation to do so. See, e.g., Equitable Life Assurance Soc'y v. Bachrach , 265 Minn. 83, 120 N.W.2d 327, 333 (1963) (explaining that "the right of the [insurer] to restitution hinges on the fact that it has made a payment which it was not obligated to pay by its contract"). Here, in contrast, Smithfield expressly chose not to rely on the contract language of its STD policy as a basis for a claim to offset payments previously made to Bruton. See Cole v. Armour & Co. , 257 N.W.2d 381, 383 (Minn. 1977) (recognizing that an employer "could have negotiated" for different contract language).

Although there is a right to reimbursement under Minn. Stat. § 176.191 (2018), when a dispute exists between two or more employers or insurers, id. , subd. 1, or when the employee is covered under certain statutorily recognized insurance plans, id. , subd. 3, Smithfield does not invoke or rely on the reimbursement authority provided by this section. See, e.g. , Johnson v. Blue Cross & Blue Shield of Minn. , 329 N.W.2d 49, 52 (Minn. 1983) (explaining that the purpose of section 176.191 is to ensure that an "employee does not suffer while primary liability is being disputed" and that industry, rather than a health insurer, bears the economic loss of work-related injuries); see also Haeg v. Seko Worldwide , No. WC06-227, 67 Minn. Worker's Comp. Dec. 192, 197 (WCCA 2007) (declining to decide whether section 176.191 provides an employer with a right of reimbursement because the employer did "not argue it is entitled to a right of reimbursement" under that statute), aff'd without opinion , 732 N.W.2d 200 (Minn. 2007) (order).